**WEIL, GOTSHAL & MANGES LLP**
**Attorneys for Debtors and**
**Debtors in Possession**
**767 Fifth Avenue**
**New York, New York 10153**
**(212) 310-8000**
**Martin J. Bienenstock, Esq. (MB 3001)**

        -and-

**TOGUT, SEGAL & SEGAL, LLP**
**Co-Attorneys for Debtors and**
**Debtors in Possession**
**One Penn Plaza**
**New York, New York 10119**
**(212) 594-5000**
**Albert Togut, Esq. (AT 9759)**

*Service of responsive pleadings on the Debtors*
*requires service on Weil, Gotshal & Manges LLP only.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**In re**                                      :
                                               :  **Chapter 11 Case No.**
**AMES DEPARTMENT STORES, INC.**, *et al.*,    :  **01-42217 (REG)**
                                               :
        **Debtors.**           :  **Jointly Administered**
                                               :
------------------------------------------------------------x

**APPLICATION OF DEBTORS FOR ORDER PURSUANT TO**
**SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE**
**APPROVING EMPLOYMENT,** *NUNC PRO TUNC* **TO AUGUST 20, 2001,**
**OF ARTHUR ANDERSEN LLP AS AUDITORS AND ACCOUNTING,**
<u>**TAX, AND FINANCIAL ADVISORS TO THE DEBTORS**</u>

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

        Ames Department Stores, Inc. and its subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), respectfully represent:

## Summary of Relief Requested

1. The Debtors desire to retain and employ Arthur Andersen LLP ("Andersen") as their auditors and accounting, tax, and financial advisors in these chapter 11 cases. By this Application, the Debtors request that the Court enter an order, pursuant to sections 327(a) and 328(a) of title 11, United States Code (the "Bankruptcy Code"), approving the employment of Andersen, *nunc pro tunc* to August 20, 2001, the date Andersen commenced work on the Debtors' behalf in these chapter 11 cases.

## Background

2. On August 20, 2001 (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors continue to be authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 5, 2001, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory creditors' committee (the "Creditors' Committee") in these cases.

## Jurisdiction

3. This Court has subject matter jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## The Debtors' Business

4. Ames Department Stores, Inc., a publicly held company, is the largest regional discount retailer in the United States. Through its subsidiaries, it currently operates 403 stores in eighteen contiguous states in the Northeast, Midwest, and Mid-Atlantic regions, as well as in the District of Columbia.

5. The Debtors' stores offer a wide range of both brand name and other quality merchandise for the home and family at prices below those of conventional department stores and specialty retailers. Specifically, the Debtors sell merchandise in three major categories: home lines (e.g., crafts, furniture, linens, home entertainment products, housewares, and small appliances), softlines (e.g., jewelry and apparel for women, men, and children), and hardlines (e.g., health and beauty care products, toys, stationery, gift wrap, and holiday decorations). In addition, all the Debtors' stores include a shoe department operated by an independent licensee. The Debtors' customers typically have an average annual household income between $25,000 and $40,000 and consist primarily of working women with families and senior citizens.

6. For the fiscal year ended February 3, 2001, the Debtors had net sales of approximately $3,953,600,000. As of August 4, 2001, the Debtors' books and records reflected assets totaling approximately $1,558,410,000 and liabilities totaling approximately $1,621,164,000.

**Relief Requested**

7. Subject to the approval of this Court, the Debtors have employed Andersen to serve as their auditors and accounting, tax, and financial advisors and to perform certain additional functions in connection with the Debtors' restructuring efforts in their chapter 11 cases. Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors request that the Court approve the employment of Andersen in such capacities to perform the necessary auditing and accounting, tax, and financial advisory services that are incidental to the administration of the Debtors' chapter 11 estates, as well as any other advisory services the Debtors may from time to time request and which the Debtors and Andersen find mutually agreeable.

8. In its capacity as auditors and accounting, tax, and financial advisors, and in connection with its restructuring work relating to the Debtors' chapter 11 cases, Andersen will work closely with the Debtors and their professionals. Andersen will also work with the professionals retained by the Creditors' Committee. Andersen will provide the services set forth in those certain engagement letters, copies of which are annexed hereto as Exhibit "A." The services provided by Andersen may include, but will not be limited to, the following:

   a. audit financial statements and assist in preparing and filing financial statements and disclosure documents required by the SEC;

   b. audit examinations of any benefit plans as may be required by the Department of Labor or the Employee Retirement Income Security Act and provide consultation with respect to other employee matters;

   c. review unaudited quarterly financial statements of the Debtors as required by applicable law or regulations, or as requested by the Debtors; (collectively with the services described in subparagraph a and b above, the "Audit Services");

   d. outsource the Debtors' tax function (the "Tax Outsourcing Services");

   e. provide other tax consulting services not included in subparagraph d above;

   f. assist in preparing financial disclosures required by the Court, including the schedules of assets and liabilities, the statement of financial affairs, and monthly operating reports;

   g. assist the Debtors, and other financial professionals retained by the Debtors, with the preparation of their business plan on a collaborative basis so as not to be duplicative in effort or expense;

   h. assist the Debtors by identifying areas of potential cost savings and operating efficiencies;

   i. assist in the coordination of responses to creditor information requests and interfacing with creditors and their financial advisors;

   j. assist Debtors' legal counsel, to the extent necessary, with the analysis and revision of the Debtors' plan or plans of reorganization;

   k. attend meetings and assist in discussions with the Creditors' Committee, the U.S. Trustee, and other interested parties, to the extent requested by the Debtors;

l. consult with the Debtors' management on other business matters, including, but not limited to, merchandising and internal audit, relating to their chapter 11 reorganization efforts; and

m. assist with such other matters as Debtors' management or legal counsel and Andersen may mutually agree.

**Andersen's Services Are Necessary and in the Best Interests of
the Debtors, Their Estates, Their Creditors, and All Parties In Interest**

9. The services of Andersen as auditors and accounting, tax, and financial advisors are necessary in order to enable the Debtors to execute their duties as debtors and debtors in possession. The services to be rendered by Andersen are not intended to be duplicative in any manner with the services performed and to be performed by any other party retained by the Debtors. Andersen, in concert with the other professionals retained by the Debtors, will undertake every reasonable effort to avoid any duplication of their respective services.[1]

10. Andersen has stated its desire and willingness to act in these cases and render the necessary professional services as auditors and accounting, tax, and financial advisors to the Debtors. The employment of Andersen is necessary, essential, and in the best interests of the administration of these chapter 11 cases and should be approved. Andersen is well qualified to perform the auditing and accounting, tax, and financial advisory services as described above, and the Debtors know of no reason why Andersen should not be retained.

11. To the best of the Debtors' knowledge, the partners, principals, and employees of Andersen do not have any connection with the Debtors, their creditors, or any

---

[1] By separate application, dated August 20, 2001, the Debtors sought authorization to employ Deloitte Consulting LP ("Deloitte") as their restructuring consultants in these chapter 11 cases. To the extent any of the services contemplated in the proposed retention of Deloitte overlap services to be performed by Andersen as proposed herein, the Debtors will utilize Andersen to avoid any duplication of services.

other party in interest, or their respective attorneys, except as set forth in that certain affidavit of Jay A. Scansaroli, a partner of Andersen, dated October 17, 2001 (the "Scansaroli Affidavit"), a copy of which is annexed hereto as Exhibit "B."

12. To the best of the Debtors' knowledge, Andersen is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code. The Scansaroli Affidavit, executed on behalf of Andersen in accordance with section 327 of the Bankruptcy Code and Bankruptcy Rule 2014, is incorporated herein by reference. The Debtors' knowledge, information, and belief regarding the matters set forth in this Application are based, in part, upon the Scansaroli Affidavit.

13. Andersen received certain amounts (as set forth in the Scansaroli Affidavit) from the Debtors as compensation for auditing and accounting and tax advisory services performed prepetition, and additional amounts (as set forth in the Scansaroli Affidavit) for the reimbursement of reasonable and necessary expenses incurred in connection therewith. Although there are outstanding amounts owed by the Debtors to Andersen for services rendered prepetition, Andersen has agreed to waive any and all claims to such prepetition amounts owing.

14. Where possible and applicable, and in accordance with Andersen's historical billing practices with the Debtors, Andersen is providing fixed-fee or reduced hourly billing rate arrangements with the Debtors for the nonrestructuring-related Audit Services and Tax Outsourcing Services, as set forth more fully in Exhibit A. As is customary, the Debtors have an agreement with Andersen for the performance of the Audit Services and Tax Outsourcing Services at agreed upon fees which represent a discount from the cost of

these services if priced out at normal rates and hours.  Such arrangements for these recurring, normal course services, as distinguished from the bankruptcy and business planning consulting services, are entered into to give effect to the timing of the work, expected company assistance, and other similar factors.  Maintaining these arrangements is in the best interests of the Debtors, their estates, and their creditors because the services are obtained at a lower cost than might otherwise be charged.  In order to facilitate providing these normal course services, the Debtors request that Andersen not be required to submit detailed time entries in connection with the Audit Services and Tax Outsourcing Services.  Such engagements do not involve restructuring services, are normal course services, and as discussed above, are billed on a fixed fee basis which reflects a discount from Andersen's normal hourly rates.  This arrangement would only apply to the Audit Services and Tax Outsourcing Services.

15. For all other advisory services, Andersen will seek to be compensated for services actually rendered on an hourly basis at the firm's customary rates and disbursements incurred upon appropriate application to this Court pursuant to the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the local rules and orders of this Court (the "Local Rules"), and guidelines established by the U.S. Trustee.  Andersen's current billing rates for professionals who may be assigned to this case are outlined in the Scansaroli Affidavit.  The Debtors believe these are customary charges for professionals performing similar services and submit that such rates are reasonable.

16. The appointment of Andersen on the terms and conditions set forth herein is necessary, essential, and in the best interests of the Debtors, their estates, their creditors, and all parties in interest and should be approved.

17. Based upon the foregoing, the Debtors submit that the Application should be granted.

### *Nunc Pro Tunc* Approval

18. Andersen began providing services to the Debtors in these chapter 11 cases on August 20, 2001. Through no one's fault, there was substantial negotiation with many parties about the allocation of duties to different professionals and the associated indemnity provisions contained in their retention agreements with the Debtors. To accommodate the Debtors' needs to develop a business plan with the Creditors' Committee, Andersen began work immediately. Because the appointment of Andersen on the terms and conditions set forth in the Engagement Letters is necessary and in the best interests of the Debtors, their estates, and their creditors, the retention of Andersen, *nunc pro tunc* to August 20, 2001, should be approved.

### Waiver of Memorandum of Law

19. This Application does not raise any novel issues of law. Accordingly, the Debtors respectfully request that the Court waive the requirement contained in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted.

### Notice

20. No trustee or examiner has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion on the entities set forth in the Debtors' Master Service List established pursuant to that certain Order Establishing Notice Procedures, dated August 20, 2001, and upon Andersen. The Debtors submit that no other or further notice need be given.

21. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the Application in all respects and grant the Debtors such other and further relief as it deems just and proper.

Dated: New York, New York
October 17, 2001

                                        AMES DEPARTMENT STORES, INC.
                                        (for itself and on behalf of its Debtor affiliates)

                                        By: /s/ David H. Lissy
                                        David H. Lissy, Esq.
                                        Senior Vice President and General Counsel