**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                              :
                                                                   :          **Chapter 11 Case No.**
**AMES DEPARTMENT STORES, INC.,** *et al.,*      :          **01-42217 (REG)**
                                                                   :
                    **Debtors.**                          :          **Jointly Administered**
                                                                   :
-------------------------------------------------------------x

## DEBTORS' CHAPTER 11 PLAN

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
New York, New York 10119
(212) 594-5000

Attorneys for Debtors and
Debtors in Possession

**TABLE OF CONTENTS**

**Page**

Article I.     Definitions and Interpretation.................................................................1

1.1     Administrative Expense Claim .................................................1

1.2     Allowed.......................................................................................1

1.3     Ames ...........................................................................................2

1.4     Available Cash............................................................................2

1.5     Avoidance Actions .....................................................................2

1.6     Avoidance Assets .......................................................................2

1.7     Bankruptcy Code ........................................................................2

1.8     Bankruptcy Court........................................................................2

1.9     Bankruptcy Rules .......................................................................2

1.10     Business Day ..............................................................................2

1.11     Cash ............................................................................................2

1.12     Causes of Action........................................................................2

1.13     Chapter 11 Cases .......................................................................3

1.14     Claim ..........................................................................................3

1.15     Class...........................................................................................3

1.16     Collateral....................................................................................3

1.17     Commencement Date..................................................................3

1.18     Committee...................................................................................3

1.19     Confirmation Date ......................................................................3

1.20     Confirmation Hearing.................................................................3

1.21     Confirmation Order ....................................................................3

1.22     Debtors.......................................................................................3

1.23     DIP Credit Agreement ...............................................................3

1.24     Disclosure Statement .................................................................4

1.25     Disputed .....................................................................................4

1.26     Distribution Record Date ...........................................................4

1.27     Effective Date ............................................................................4

1.28     Equity Interest............................................................................4

1.29     Final Order ...................................................................................4

1.30     General Unsecured Claim ...........................................................5

1.31     Indentures ..................................................................................5

1.32     Indenture Trustees ....................................................................5

1.33     Liquidating Trust .......................................................................5

1.34     Liquidating Trust Agreement ....................................................5

1.35     Liquidating Trust Assets ............................................................5

1.36     Liquidating Trust Claims Reserve .............................................5

1.37     Note Claim .................................................................................5

1.38     Person ........................................................................................6

1.39     Plan ............................................................................................6

1.40     Plan Administrator .....................................................................6

1.41     Plan Implementation Party ........................................................6

1.42     Plan Supplement .......................................................................6

1.43     Priority Non-Tax Claim .............................................................6

1.44     Priority Tax Claim .....................................................................6

1.45     Pro Rata Share ...........................................................................6

1.46     Schedules ...................................................................................7

1.47     Secured Claim ............................................................................7

1.48     Subsequent Distribution Date ...................................................7

1.49     Tax Code ....................................................................................7

1.50     Tort Claim ..................................................................................7

1.51     Transfer Date .............................................................................7

1.52     Trustee .......................................................................................7

1.53     Trustee Expense Fund ...............................................................7

1.54     U.S. Trustee ...............................................................................8

Article II.     Administrative Expense Claims and Priority Tax Claims .........8

2.1     Administrative Expense Claims ................................................8

| | | | |
|---|---|---|---|
| | 2.2 | Compensation and Reimbursement Claims | 8 |
| | 2.3 | Priority Tax Claims | 8 |
| | 2.4 | DIP Credit Agreement Claims | 8 |
| | 2.5 | Special Provisions Regarding Indenture Trustees' Fees and Expenses | 9 |
| Article III. | | Classification of Claims and Equity Interests | 9 |
| Article IV. | | Treatment of Claims and Equity Interests | 10 |
| | 4.1 | Class 1 – Secured Claims | 10 |
| | 4.2 | Class 2 - Priority Non-Tax Claims | 10 |
| | 4.3 | Class 3 - General Unsecured Claims | 10 |
| | 4.4 | Class 4 - Equity Interests | 10 |
| Article V. | | Provisions Governing Distributions | 11 |
| | 5.1 | Distribution Record Date | 11 |
| | 5.2 | Method of Distributions Under the Plan | 11 |
| | 5.3 | Delivery of Distributions and Undeliverable Distributions | 12 |
| | 5.4 | Withholding and Reporting Requirements | 12 |
| | 5.5 | Time Bar to Cash Payments | 12 |
| | 5.6 | Minimum Distributions and Fractional Shares | 13 |
| | 5.7 | Setoffs | 13 |
| | 5.8 | Transactions on Business Days | 13 |
| | 5.9 | Allocation of Plan Distribution Between Principal and Interest | 13 |
| Article VI. | | Means for Implementation and Execution of the Plan | 13 |
| | 6.1 | Substantive Consolidation | 13 |
| | 6.2 | The Plan Administrator | 14 |
| | 6.3 | The Liquidating Trust | 17 |
| | 6.4 | Securities Exempt | 23 |
| | 6.5 | Cancellation of Existing Securities and Agreements | 23 |
| | 6.6 | Debtors' Postconfirmation Role; Dissolution | 23 |
| | 6.7 | Books and Records | 24 |

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| 6.8 | Corporate Action | 24 |
| 6.9 | Effectuating Documents and Further Transactions | 25 |
| Article VII. | Procedures for Disputed Claims | 25 |
| 7.1 | Objections to Claims | 25 |
| 7.2 | No Distribution Pending Allowance | 25 |
| 7.3 | Resolution of Disputed Claims | 26 |
| 7.4 | Estimation | 26 |
| 7.5 | Allowance of Disputed Claims | 26 |
| Article VIII. | Executory Contracts and Unexpired Leases | 27 |
| 8.1 | Executory Contracts and Unexpired Leases | 27 |
| 8.2 | Approval of Rejection of Executory Contracts and Unexpired Leases | 27 |
| 8.3 | Rejection Claims | 27 |
| Article IX. | Effectiveness of the Plan | 27 |
| 9.1 | Condition Precedent to Confirmation of Plan | 27 |
| 9.2 | Conditions Precedent to Effective Date | 27 |
| 9.3 | Satisfaction of Conditions | 28 |
| 9.4 | Effect of Nonoccurrence of Conditions to Consummation | 28 |
| Article X. | Effect of Confirmation | 28 |
| 10.1 | Vesting of Assets | 28 |
| 10.2 | Release of Assets | 28 |
| 10.3 | Binding Effect | 29 |
| 10.4 | Term of Injunctions or Stays | 29 |
| 10.5 | Causes of Action | 29 |
| 10.6 | Injunction | 29 |
| 10.7 | Injunction Against Interference with Plan | 29 |
| Article XI. | Retention of Jurisdiction | 30 |
| 11.1 | Jurisdiction of Bankruptcy Court | 30 |
| Article XII. | Miscellaneous Provisions | 31 |

**TABLE OF CONTENTS**
**(continued)**

| | | |
|---|---|---|
| 12.1 | Dissolution of Committee | 31 |
| 12.2 | Substantial Consummation | 31 |
| 12.3 | Effectuating Documents and Further Transactions | 31 |
| 12.4 | Exemption from Transfer Taxes | 32 |
| 12.5 | Limited Release | 32 |
| 12.6 | Exculpation | 32 |
| 12.7 | Post-Confirmation Date Fees and Expenses | 33 |
| 12.8 | Payment of Statutory Fees | 33 |
| 12.9 | Modification of Plan | 33 |
| 12.10 | Revocation or Withdrawal of Plan | 34 |
| 12.11 | Courts of Competent Jurisdiction | 34 |
| 12.12 | Severability | 34 |
| 12.13 | Governing Law | 34 |
| 12.14 | Successors and Assigns | 34 |
| 12.15 | Time | 34 |
| 12.16 | Notices | 35 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                           :

                                :       **Chapter 11 Case No.**

**AMES DEPARTMENT STORES, INC.,** *et al.,*   :       **01-42217 (REG)**

                                :

               **Debtors.**       :       **Jointly Administered**

                                :
-------------------------------------------------------------x

## DEBTORS' CHAPTER 11 PLAN

       Ames Department Stores, Inc., Ames Merchandising Corporation, Amesplace.com, Inc., Ames Realty II, Inc., and Ames Transportation Systems, Inc., the above-captioned debtors and debtors in possession, propose the following chapter 11 plan pursuant to section 1121(a) of title 11 of the United States Code:

### ARTICLE I.

### DEFINITIONS AND INTERPRETATION

**DEFINITIONS.**  The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

      **1.1**    **Administrative Expense Claim** means any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases allowed under sections 503(b), 507(a)(1), and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Chapter 11 Cases, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under sections 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

      **1.2**    **Allowed** means, with reference to any Claim, (i) any Claim against any Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with Section 7.1 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such

objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or hereunder.

**1.3** **Ames** means Ames Department Stores, Inc., a Delaware corporation, the parent debtor or debtor in possession, as the context requires.

**1.4** **Available Cash** means, as of the Effective Date or any Subsequent Distribution Date, as the case may be, all Cash of each Debtor realized from its business operations, the sale or other disposition of its assets, the interest earned on invested funds, recoveries from Causes of Action and Avoidance Actions, or any other source, less the amount of Available Cash previously distributed pursuant to the Plan and the amount of Cash estimated and reserved by the Debtors to (i) fund adequately the administration of the Plan and the Chapter 11 Cases on and after the Effective Date, and (ii) pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if all such Disputed Claims were to become Allowed Claims.

**1.5** **Avoidance Actions** means any actions commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

**1.6** **Avoidance Assets** means the collections realized on the settlement or resolution of the Avoidance Actions.

**1.7** **Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**1.8** **Bankruptcy Court** means the United States District Court for the Southern District of New York, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

**1.9** **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

**1.10** **Business Day** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

**1.11** **Cash** means legal tender of the United States of America.

**1.12** **Causes of Action** means any and all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in

whole or in part on any act or omission or other event occurring prior to the Commencement Date or during the course of the Chapter 11 Cases, including through the Effective Date, but not including the Avoidance Actions.

**1.13** **Chapter 11 Cases** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on August 20, 2001 in the Bankruptcy Court and styled *In re Ames Department Stores, Inc., et al.*, Ch. 11 Case No. 01-42217 (REG) (Jointly Administered).

**1.14** **Claim** has the meaning set forth in section 101 of the Bankruptcy Code.

**1.15** **Class** means any group of Claims or Equity Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

**1.16** **Collateral** means any property or interest in property of the estate of any Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.17** **Commencement Date** means August 20, 2001.

**1.18** **Committee** means the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

**1.19** **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.20** **Confirmation Hearing** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.21** **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.22** **Debtors** means Ames Department Stores, Inc., Ames Merchandising Corporation, Amesplace.com, Inc., Ames Realty II, Inc., and Ames Transportation Systems, Inc.

**1.23** **DIP Credit Agreement** means that certain Revolving Credit, Guaranty, and Security Agreement, dated as of September 27, 2002, as amended, among Ames Realty II, Inc., as borrower, the remaining Debtors as guarantors, and Kimco Funding, LLC, as lender, and any of the documents and instruments relating thereto or referred to therein.

**1.24** **Disclosure Statement** means the disclosure statement relating to the Plan, including, without limitation, all exhibits thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.25** **Disputed** means, with respect to any Claim which has not been Allowed pursuant to the Plan or a Final Order,

(a) if no proof of claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtors or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or

(b) if a proof of claim or request for payment of an Administrative Expense Claim has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim as asserted in the proof of claim varies from the nature and amount of such Claim as listed on the Schedules; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtors which has not been withdrawn or determined by a Final Order; or (v) any Tort Claim.

**1.26** **Distribution Record Date** means the Confirmation Date.

**1.27** **Effective Date** means a Business Day on or after the Confirmation Date specified by the Debtors on which the conditions to the effectiveness of the Plan specified in Section 9.2 hereof have been satisfied.

**1.28** **Equity Interest** means the interest of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

**1.29** **Final Order** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceeding for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing

shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired. The susceptibility of a Claim to a challenge under section 502(j) of the Bankruptcy Code shall not render a Final Order not a Final Order.

**1.30** **General Unsecured Claim** means any Claim against any of the Debtors that is (i) not an Administrative Expense Claim, Priority Tax Claim, Secured Claim, or Priority Non-Tax Claim, or (ii) otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**1.31** **Indentures** means (i) the Indenture, dated as of April 27, 1999, between Ames, as Borrower, Ames Realty II, Inc., Ames FS, Inc., Ames Transportation Systems, Inc., AMD, Inc., and Ames Merchandising Corporation, as Guarantors, and The Chase Manhattan Bank, as Trustee, as such Indenture may have been amended or modified, pursuant to which $200,000,000 of 10% Senior Notes due 2006 were issued, and (ii) the Indenture, dated as of April 19, 1996, between Hills Stores Company, as Borrower, Hills Department Store Company, C.R.H. International, Inc., Canton Advertising, Inc., Corporate Vision, Inc., HDS Transport, Inc., and Hills Distributing Company, as Guarantors, and Fleet National Bank, as Trustee, as such Indenture may have been amended or modified, pursuant to which $195,000,000 of 12.5% Senior Notes due 2003 were issued.

**1.32** **Indenture Trustees** means the trustees under the respective Indentures, and any successors or predecessors thereto.

**1.33** **Liquidating Trust** means the liquidating trust described in Article VI hereof.

**1.34** **Liquidating Trust Agreement** means, if the Plan Implementation Party elects to establish a Liquidating Trust, the agreement governing the Liquidating Trust, the form of which will be filed with the Bankruptcy Court not less than ten (10) days prior to the establishment of the Liquidating Trust.

**1.35** **Liquidating Trust Assets** means the Trustee Expense Fund and any property interests, Claims, or Causes of Action or potential Causes of Action belonging to the Debtors, including, but not limited to, the Avoidance Actions, and the earnings and proceeds therefrom, including the Avoidance Assets, but excluding any Cash and other assets required to be distributed to the holders of Allowed Claims on the Effective Date or prior to the establishment of the Liquidating Trust.

**1.36** **Liquidating Trust Claims Reserve** has the meaning assigned to such term in Section 6.3(n)(ii)(d) hereof.

**1.37** **Note Claim** means a Claim against any of the Debtors arising under or in connection with (i) the Indenture, dated as of April 27, 1999, between Ames, as Borrower, Ames Realty II, Inc., Ames FS, Inc., Ames Transportation Systems, Inc.,

AMD, Inc., and Ames Merchandising Corporation, as Guarantors, and The Chase Manhattan Bank, as Trustee, as such Indenture may have been amended or modified, and the $200,000,000 of 10% Senior Notes due 2006 issued thereunder, or (ii) the Indenture, dated as of April 19, 1996, between Hills Stores Company, as Borrower, Hills Department Store Company, C.R.H. International, Inc., Canton Advertising, Inc., Corporate Vision, Inc., HDS Transport, Inc., and Hills Distributing Company, as Guarantors, and Fleet National Bank, as Trustee, as such Indenture may have been amended or modified, and the $195,000,000 of 12.5% Senior Notes due 2003 issued thereunder, excluding the fees and expenses of the trustees under the Indentures, which shall be paid pursuant to Section 2.5 hereof.

**1.38**  **Person** has the meaning set forth in section 101(41) of the Bankruptcy Code.

**1.39**  **Plan** means this chapter 11 plan, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**1.40**  **Plan Administrator** means Rolando de Aguiar in his capacity as the person charged with administering the Plan as set forth in Section 6.2 hereof.

**1.41**  **Plan Implementation Party** means the Debtors, the Plan Administrator, or the Trustee, as the case may be.

**1.42**  **Plan Supplement** means the forms of documents in a form reasonably acceptable to the Committee effectuating the transactions contemplated by this Plan, which documents shall be filed with the Clerk of the Bankruptcy Court no later than ten (10) days prior to the Confirmation Hearing.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected at the Office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims and Equity Interests may obtain a copy of the Plan Supplement upon written request to the undersigned counsel.

**1.43**  **Priority Non-Tax Claim** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

**1.44**  **Priority Tax Claim** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.45**  **Pro Rata Share** means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

**1.46**  **Schedules** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

**1.47**  **Secured Claim** means a Claim (i) secured by Collateral, to the extent of the value of such Collateral (A) as set forth in the Plan, (B) as agreed to by the holder of such Claim and the Debtors, or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

**1.48**  **Subsequent Distribution Date** means, following the Effective Date, a date which shall occur at the end of each subsequent six-month period, or more frequently as may be determined by the Plan Implementation Party, on which a Pro Rata Share of Available Cash or Liquidating Trust Assets, as the case may be, is distributed to the holders of Allowed Claims.

**1.49**  **Tax Code** means title 26 of the United States Code, as amended from time to time.

**1.50**  **Tort Claim** means any Claim related to personal injury, property damage, products liability, wrongful death, employment litigation, or other similar Claims against any of the Debtors which arise out of events which occurred, in whole or in part, prior to the Commencement Date.

**1.51**  **Transfer Date** means, in the event the Plan Implementation Party elects to establish a Liquidating Trust, the date on which the Plan Implementation Party shall transfer the Liquidating Trust Assets to the Liquidating Trust, which transfer shall not occur prior to the Effective Date.

**1.52**  **Trustee** shall have the meaning ascribed to such term in Section 6.3(e) hereof.

**1.53**  **Trustee Expense Fund** means, in the event the Plan Implementation Party elects to establish a Liquidating Trust, the fund established, held, and maintained by the Trustee for the purpose of paying the expenses incurred by the Trustee on and after the Effective Date and any obligations imposed on the Trustee or the Liquidating Trust pursuant to the Plan, including expenses relating to the performance of the Trustee's obligations under the Liquidating Trust Agreement and Section 6.3 hereof; *provided, however,* that the legal fees, costs, and expenses incurred in connection with the pursuit of the Avoidance Actions shall not be paid out of the Trustee Expense Fund.  In the event the Plan Implementation Party elects to establish a Liquidating Trust, the Debtors initially shall deposit $5 million into the Trustee Expense Fund on the Effective Date and may deposit additional funds thereafter in an amount the Debtors determine is reasonably

necessary to satisfy the obligations of the Trustee or the Liquidating Trust pursuant to the Plan.

**1.54 U.S. Trustee** means the United States Trustee for the Southern District of New York.

### INTERPRETATION; APPLICATION OF DEFINITIONS AND RULES OF CONSTRUCTION.

The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

### ARTICLE II.

### ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

**2.1 Administrative Expense Claims.** Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, on the Effective Date, or as soon thereafter as is reasonably practicable, the Plan Implementation Party shall pay to each holder of an Allowed Administrative Expense Claim, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim.

**2.2 Compensation and Reimbursement Claims.** All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Confirmation Date, and (ii) shall be paid in full in such amounts as are allowed by the Bankruptcy Court (A) upon the date upon which the order relating to any such Administrative Expense Claim is entered, or (B) upon such other terms as may be mutually agreed upon between the holder of such an Administrative Expense Claim and the Plan Implementation Party.

**2.3 Priority Tax Claims.** Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, on the Effective Date, or as soon thereafter as is reasonably practicable, the Plan Implementation Party shall pay to each holder of an Allowed Priority Tax Claim, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim.

**2.4 DIP Credit Agreement Claims.** On the Effective Date, the Plan Implementation Party shall pay or arrange for the payment of all amounts outstanding

under the DIP Credit Agreement. Once such payment has been made, the DIP Credit Agreement shall be deemed terminated (subject in all respects to any carve-out approved by the Bankruptcy Court in the Bankruptcy Court orders approving the DIP Credit Agreement on a final basis), and Kimco Funding, LLC shall take all reasonable action to confirm the removal of any liens on the properties of the Debtors securing the DIP Credit Agreement.

**2.5** **Special Provisions Regarding Indenture Trustees' Fees and Expenses.** The reasonable fees and expenses of each trustee under an Indenture (an "Indenture Trustee") (which includes the reasonable fees and expenses of any professionals retained by the Indenture Trustees), shall be paid in Cash on the Effective Date, or as soon thereafter as is reasonably practicable, upon submission of documented invoices to the Plan Implementation Party, the Committee, and the U.S. Trustee, subject to a review for reasonableness by the Plan Implementation Party, the U.S. Trustee, and designated representatives of the members of the Committee who are not Indenture Trustees, without the necessity of making application to the Bankruptcy Court. Subject to Section 6.5 hereof, each Indenture Trustee's charging lien will be discharged solely upon payment in full of the respective fees and expenses of the Indenture Trustees and termination of the respective Indenture Trustee's duties. Nothing herein shall be deemed to impair, waive, or discharge the Indenture Trustees' respective charging liens for any fees and expenses not paid by the Debtors.

## ARTICLE III.

### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following table designates the Classes of Claims against and Equity Interests in the Debtors and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to reject the Plan:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Secured Claims | Impaired | Yes |
| Class 2 | Priority Non-Tax Claims | Impaired | Yes |
| Class 3 | General Unsecured Claims | Impaired | Yes |
| Class 4 | Equity Interests | Impaired | No (deemed to reject) |

For convenience of identification, the Plan classifies the Allowed Claims in Class 1 as a single Class. This Class is actually a group of subclasses, depending on the underlying property securing such Allowed Claims, and each subclass is treated hereunder as a distinct Class for voting and distribution purposes.

# ARTICLE IV.

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1     Class 1 – Secured Claims**.  Except to the extent that a holder of an Allowed Secured Claim against any of the Debtors agrees to a different treatment of such Claim, on the Effective Date, or as soon thereafter as is reasonably practicable, each holder of an Allowed Secured Claim shall receive, at the option of the Plan Implementation Party, and in full satisfaction of such Claim, either (i) Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Secured Claim, (ii) the proceeds of the sale or disposition of the Collateral securing such Allowed Secured Claim to the extent of the value of the holder's secured interest in the Allowed Secured Claim, net of the costs of disposition of such Collateral, (iii) the Collateral securing such Allowed Secured Claim, (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of such Allowed Secured Claim is entitled, or (v) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code.  In the event the Plan Implementation Party treats a Claim under clause (i) or (ii) of this Section, the liens securing such Secured Claim shall be deemed released.

**4.2     Class 2 - Priority Non-Tax Claims**.  Except to the extent that a holder of an Allowed Priority Non-Tax Claim against any of the Debtors agrees to a different treatment of such Claim, on the Effective Date, or as soon thereafter as is reasonably practicable, each such holder shall receive, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim.

**4.3     Class 3 - General Unsecured Claims**.  On the Effective Date, or as soon thereafter as is reasonably practicable, and subject to Section 6.3(a) hereof (permitting the establishment of a Liquidating Trust), the holders of Allowed General Unsecured Claims shall receive their Pro Rata Share of Available Cash, but not to exceed the full amount of such Allowed General Unsecured Claim.

**4.4     Class 4 - Equity Interests**.  On the Effective Date, all Equity Interests issued by Ames shall be canceled and one new share of Ames's common stock will be issued to a custodian to be designated by Ames, who will hold such share for the benefit of the holders of such former Equity Interests consistent with their former economic entitlements.  Other than such beneficial interest, and subject to Section 6.3(a) hereof (permitting the establishment of a Liquidating Trust), each holder of an Equity Interest shall neither receive nor retain any property or interest in property on account of such Equity Interest.  On or promptly after the Effective Date, Ames will file with the Securities and Exchange Commission a Form 15 for the purpose of terminating the registration of any of its publicly traded securities.  All common stock of Ames outstanding after the Effective Date shall be canceled on the date Ames is dissolved in accordance with Section 6.6(d) hereof.

# ARTICLE V.

## PROVISIONS GOVERNING DISTRIBUTIONS

**5.1     Distribution Record Date.**  As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors, or their agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests.  The Plan Implementation Party shall have no obligation to recognize any transfer of the Claims or Equity Interests occurring on or after the Distribution Record Date.  The Plan Implementation Party shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

**5.2     Method of Distributions Under the Plan.**

    **(a)     Effective Date Payments and Transfers.**  On the Effective Date, or as soon thereafter as is reasonably practicable, after reserving sufficient funds to pay holders of Disputed Claims against the Debtors in the amount such holders would be entitled to receive under the Plan if all such Claims were to become Allowed Claims, the Plan Implementation Party shall remit to each holder of an Allowed Claim against the Debtors an amount in Cash equal to the Allowed amount of such Claim; *provided, however,* that in the event the Plan Implementation Party elects to establish a Liquidating Trust, the Plan Implementation Party shall transfer the Liquidating Trust Assets free and clear of all liens, claims, and encumbrances to the Liquidating Trust, but subject to any obligations imposed by the Plan, on behalf of holders of Allowed General Unsecured Claims.

    **(b)     Subsequent Distributions.**  Unless otherwise provided in the Plan, as additional Available Cash becomes available subsequent to the Effective Date from (i) undeliverable, time-barred, or unclaimed distributions to holders of Allowed Claims, (ii) the disallowance or reduction of Disputed Claims, (iii) a decrease in the estimate of Cash necessary to fund the administration of the Plan, (iv) liquidation of the Debtors' non-Cash assets, (v) recoveries on Causes of Action or Avoidance Actions, or (vi) otherwise, the Plan Implementation Party shall, on each such Subsequent Distribution Date, remit to each holder of an Allowed General Unsecured Claim its Pro Rata Share of Available Cash, but not to exceed in aggregate (taking into account all prior distributions under Section 4.3 hereof) the full amount of such Claim.  In no event shall the Plan Implementation Party be obligated to make a distribution if, in its reasonable business judgment, the amount then on hand and the ultimate distribution to be made would not be justified, taking into account all the attendant costs of such distribution.  In such case, any undistributed amount may be held over to the next Subsequent Distribution Date.

(c) **Distributions of Cash**. At the option of the Plan Implementation Party, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

**5.3** **Delivery of Distributions and Undeliverable Distributions**. Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents or in a letter of transmittal unless the Plan Implementation Party has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. Any distribution to be made to a holder of a General Unsecured Claim under any of the Indentures shall be made to the respective Indenture Trustee to assert its charging lien against such distributions. The distribution of Available Cash or Liquidating Trust Assets, as the case may be, to any of the Indenture Trustees shall be deemed a distribution to the respective holder of a General Unsecured Claim under the respective Indentures. In the event that any distribution to any holder is returned as undeliverable, no further distributions to such holder shall be made unless and until the Plan Implementation Party is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest. All demands for undeliverable distributions shall be made on or before ninety (90) days after the date such undeliverable distribution was initially made. Thereafter, the amount represented by such undeliverable distribution shall irrevocably revert to the Plan Implementation Party, and any Claim in respect of such undeliverable distribution shall be discharged and forever barred.

**5.4** **Withholding and Reporting Requirements**. In connection with the Plan and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim or Equity Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

**5.5** **Time Bar to Cash Payments**. Checks issued by the Plan Implementation Party in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Plan Implementation Party by the holder of the Allowed Claim to whom such check originally was issued. Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the sixty (60) day period following the

date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Plan Implementation Party, and any Claim in respect of such voided check shall be discharged and forever barred.

**5.6** **Minimum Distributions and Fractional Shares.** No payment of Cash less than $10 shall be made by the Plan Implementation Party to any holder of a General Unsecured Claim. Any Available Cash or Liquidating Trust Assets, as the case may be, which is undistributable in accordance with this Section 5.6 shall be distributed to a charitable organization exempt from federal income tax under Section 501(c)(3) of the Tax Code to be selected by, and unrelated to, the Plan Implementation Party.

**5.7** **Setoffs.** The Plan Implementation Party may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Plan Implementation Party of any such claim the Debtors may have against the holder of such Claim.

**5.8** **Transactions on Business Days.** If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

**5.9** **Allocation of Plan Distribution Between Principal and Interest.** All distributions in respect of any Allowed Claim shall be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

**ARTICLE VI.**

**MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN**

**6.1** **Substantive Consolidation.**

(a) Entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of Ames Merchandising Corporation, Amesplace.com, Inc., Ames Realty II, Inc., and Ames Transportation Systems, Inc., and their respective estates, into Ames for voting, confirmation, and distribution purposes under the Plan. Solely for such purposes, on and after the Effective Date, (i) all assets and all liabilities of the Debtors shall be deemed merged into Ames, (ii) all guaranties of any Debtor of the payment, performance, or collection of obligations of another Debtor shall be eliminated and canceled, (iii) any obligation of any Debtor and all guaranties thereof executed by

13

one or more of the other Debtors shall be treated as a single obligation, and such guaranties shall be deemed a single Claim against the consolidated Debtors, (iv) all joint obligations of two or more Debtors and all multiple Claims against such entities on account of such joint obligations shall be treated and allowed only as a single Claim against the consolidated Debtors, (v) all Claims between or among the Debtors shall be canceled, and (vi) each Claim filed in the Chapter 11 Case of any Debtor shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date.

**(b)** The substantive consolidation and deemed merger effected pursuant to Section 6.1(a) hereof shall not affect (other than for purposes related to funding distributions under the Plan and as set forth in Section 6.1(a) hereof) (i) the legal and organizational structure of the Debtors, (ii) defenses to any Causes of Action or requirements for any third party to establish mutuality to assert a right of setoff, and (iii) distributions out of any insurance policies or proceeds of such policies.

**6.2** **The Plan Administrator.** The Confirmation Order shall name the Plan Administrator to implement the terms of the Plan. The Plan Administrator shall act for Ames and its Debtor subsidiaries in a fiduciary capacity as applicable to a board of directors, subject to the provisions hereof. The Plan Administrator, as the fiduciary of Ames, which is the sole shareholder of the Debtor subsidiaries, will have the power to appoint officers and directors of Ames' Debtor subsidiaries in accordance with their respective articles of incorporation and bylaws. It is the intent of the Plan Administrator to appoint himself as the sole officer and director of the Debtor subsidiaries. The salient terms of the Plan Administrator's employment, including the Plan Administrator's duties and compensation (which compensation shall be negotiated by the Plan Administrator, the Debtors, and the Committee), to the extent not set forth in the Plan, shall be set forth in the Confirmation Order. The Plan Administrator shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases. In the event the Plan Administrator dies, is terminated, or resigns for any reason, the Committee shall designate a successor. The Plan Administrator shall be required to disclose its connections, if any, with the Debtors, their creditors, any other party in interest, and the U.S. Trustee.

**(a)** **Duties and Powers.** The Plan Administrator, together with its representatives and professionals, shall administer the Plan. The duties and powers of the Plan Administrator shall include all powers necessary to implement the Plan and administrate and liquidate the assets of Ames, and, indirectly the Debtor subsidiaries, including, without limitation, the duties and powers listed herein.

(i) The Plan Administrator may exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced, and take all actions that may be or could have been taken by an officer, director, or stockholder of Ames with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, and stockholders,

including, without limitation, amendment of the certificate of incorporation and bylaws of the Debtors and the dissolution of any Debtor.

(ii)      The Plan Administrator may object to, seek to subordinate, compromise, or settle any or all Claims against any of the Debtors.

(iii)      The Plan Administrator shall liquidate and convert, or cause to be liquidated and converted, to Cash the assets of the Debtors, make timely distributions, administer the winding up of the Debtors' affairs, including, but not limited to, causing the dissolution of the Debtors and closing the Chapter 11 Cases, and not unduly prolong the duration of the Chapter 11 Cases. In so doing, the Plan Administrator shall exercise its reasonable business judgment in liquidating the assets of the Debtors to maximize recoveries. The liquidation of such assets may be accomplished either through the sale of the assets of the Debtors (in whole or in combination, and including the sale of any Causes of Action or Avoidance Actions) or through the prosecution, compromise and settlement, abandonment, or dismissal of any or all Claims, Causes of Action, or Avoidance Actions, or otherwise.

(iv)      The Plan Administrator may abandon, or cause to be abandoned, in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any assets if it concludes they are of no benefit to the Debtors' estates.

(v)      The Plan Administrator may pursue, or cause to be pursued, Causes of Action and Avoidance Actions of the Debtors. The Plan Administrator shall have discretion to elect whether or not to pursue any and all Causes of Action and Avoidance Actions of the Debtors and whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action and Avoidance Actions, as the Plan Administrator may determine is in the best interests of holders of Claims against and Equity Interests in the Debtors, and the Plan Administrator shall have no liability to any of the Debtors, their estates, their creditors, the Committee, its members, or any other party for the outcome of its decisions in this regard, except for gross negligence or willful misconduct.

(vi)      The Plan Administrator may retain professionals to assist it in performing its duties under the Plan.

(vii)      The Plan Administrator shall maintain the Debtors' books and records, maintain accounts, make distributions, and take other actions consistent with the Plan and the implementation hereof.

(viii)      The Plan Administrator may enter, or cause to be entered, into any agreement or execute any document required by or consistent with the Plan and perform all the Debtors' obligations hereunder.

(ix)　　The right and power to invest any of the Debtors' Cash, including cash proceeds from the liquidation of any of the Debtors' assets and the realization or disposition of any Causes of Action and Avoidance Actions, and any income earned by the Debtors shall be limited to the right and power to invest such Cash in United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities, or investments permitted by section 345 of the Bankruptcy Code or otherwise authorized by the Bankruptcy Court, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate credit risk or interest rate risk; *provided, however,* the Plan Administrator may expend the Cash of the Debtors to effectuate the provisions of the Plan.

(x)　　The Plan Administrator shall have the powers of administration regarding all the Debtors' tax obligations, including filing of returns. The Plan Administrator shall (A) endeavor to complete and file within ninety (90) days after the dissolution of the Debtors (or such longer period as authorized by the Bankruptcy Court for cause), the Debtors' final federal, state, and local tax returns, (B) request, if necessary, an expedited determination of any unpaid tax liability of the Debtors or their estates under section 505(b) of the Bankruptcy Code for all taxable periods of the Debtors ending after the Commencement Date through the liquidation of the Debtors as determined under applicable tax laws, and (C) represent the interest and account of the Debtors or their estates before any taxing authority in all matters, including, without limitation, any action, suit, proceeding, or audit.

(xi)　　The Plan Administrator may incur any reasonable and necessary expenses in connection with the performance of its duties under the Plan.

(xii)　　The Plan Administrator may take all other actions not inconsistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable with respect to administering the Plan.

**(b)**　　**Indemnification of Plan Administrator.** The Plan Administrator and its agents and professionals shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Plan Administrator, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Plan Administrator, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts. Any indemnification claim of the Plan Administrator (and the other parties entitled to indemnification under this subsection (b)) shall be satisfied from the funds reserved by the Debtors to fund the administration of the Plan and the Chapter 11 Cases on and after the Effective Date; *provided, however,* the Plan Administrator shall return any portion of such funds used to defend any action in which the Plan Administrator is found to have acted with gross negligence or willful misconduct. The Plan Administrator shall be entitled to rely, in good faith, on the advice

of its retained professionals.  The provisions of this subsection (b) do not apply to actions taken by the Plan Administrator in any capacity other than as Plan Administrator.

(c)     **Termination of Duties**.  The duties of the Plan Administrator will terminate (i) after the Debtors have been dissolved in accordance with Section 6.6(d) hereof, (ii) all assets held or controlled by the Plan Administrator have been distributed in accordance with the terms of the Plan, and (iii) upon material completion of all other duties and functions set forth in the Plan, but in no event later than three (3) years after the Effective Date, unless extended by order of the Bankruptcy Court.

(d)     **Closing of Chapter 11 Cases**.  When all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by Final Order, and all remaining assets of the Debtors have been liquidated and converted into Cash or abandoned and such Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**6.3     The Liquidating Trust.**

(a)     **Establishment of Liquidating Trust**.  In the event the Plan Implementation Party elects to establish a Liquidating Trust to facilitate the liquidation and winding up of the Debtors, the Plan Implementation Party shall transfer the Liquidating Trust Assets to the Liquidating Trust on the Transfer Date.  In such event, in lieu of having a continuing right under the Plan to receive Available Cash, the holders of Allowed General Unsecured Claims shall receive beneficial interests in the Liquidating Trust entitling them to share in the proceeds of the Liquidating Trust Assets on an economically equivalent basis to that provided in Section 4.3 hereof and, to the extent that the Plan Implementation Party reasonably determines that the value of the Liquidating Trust Assets on the Transfer Date exceeds the aggregate amount of the Allowed General Unsecured Claims (less any amounts previously distributed thereon), the holders of Allowed Equity Interests shall also receive beneficial interests in the Liquidating Trust entitling them to share on an economically equivalent basis to that provided in Section 4.4 hereof.

(b)     **Execution of Liquidating Trust Agreement**.  In the event the Plan Implementation Party elects to establish a Liquidating Trust as provided herein, on the Effective Date, the Liquidating Trust Agreement, in a form reasonably acceptable to the Committee, shall be executed, and all other necessary steps shall be taken to establish the Liquidating Trust and the beneficial interests therein, which shall be for the benefit of the holders of Allowed General Unsecured Claims.  This Section 6.3 sets forth certain of the rights, duties, and obligations of the Trustee.  In the event of any conflict between the terms of this Section 6.3 and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall govern.

(c)     **Purpose of Liquidating Trust**.  The Liquidating Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance

with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

(d)  **Liquidating Trust Assets.**  The Liquidating Trust shall consist of the Liquidating Trust Assets.  Any Cash or other property received from third parties from the prosecution, settlement, or compromise of the Avoidance Actions shall constitute Liquidating Trust Assets for purposes of distributions under the Liquidating Trust.  On the Transfer Date, the Plan Implementation Party shall transfer all the Liquidating Trust Assets to the Liquidating Trust free and clear of all liens, claims, and encumbrances; *provided, however*, that all such assets shall be transferred to the Liquidating Trust subject to (i) any Claims in Article II and Article IV hereof (other than General Unsecured Claims) that have not been paid or Allowed as of the Transfer Date (but which are subsequently Allowed), (ii) any expenses incurred and unpaid, or to be incurred, by the Plan Implementation Party in respect of consummation of the Plan and winding up of the Debtors' estates, (iii) and any post-Transfer Date obligations of the Plan Implementation Party.  In addition, all bank accounts established by the Plan Implementation Party to fund all Claims receiving Cash payments shall be held by the Trustee in the name of the Liquidating Trust subject to the provisions of the Plan, and the Liquidating Trust shall have no greater rights to such bank accounts than the rights of the Plan Implementation Party.

(e)  **Governance of Liquidating Trust.**  The Liquidating Trust shall be governed by a trustee (the "Trustee").

(f)  **The Trustee.**  In the event the Plan Implementation Party elects to establish a Liquidating Trust, Rolando de Aguiar shall be designated as the Trustee on or before the Transfer Date by the Committee with the consent of the Debtors, which consent shall not be unreasonably withheld.  The designation of the Trustee shall be effective on the Transfer Date without the need for a further order of the Bankruptcy Court.

(g)  **Role of the Trustee.**

(i)  In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Trustee shall (A) have the power and authority to hold, manage, sell, and distribute the Liquidating Trust Assets to the holders of Allowed General Unsecured Claims, (B) hold the Liquidating Trust Assets for the benefit of the holders of Allowed General Unsecured Claims, (C) have the power and authority to hold, manage, sell, and distribute Cash or non-Cash Liquidating Trust Assets obtained through the exercise of its power and authority, (D) have the power and authority to prosecute and resolve, in the names of the Debtors and/or the name of the Trustee, the Avoidance Actions, (E) have the power and authority to prosecute and resolve objections to Disputed General Unsecured Claims, (F) have the power and authority to perform such other functions as are provided in the Plan, and (G) have the power and authority to administer the closure of the Chapter 11 Cases.  The Trustee shall be responsible for all decisions and duties with respect to the Liquidating Trust and the Liquidating Trust Assets.  In all

circumstances, the Trustee shall act in the best interests of all beneficiaries of the Liquidating Trust and in furtherance of the purpose of the Liquidating Trust.

(ii)    After the certificates of cancellation, dissolution, or merger for all the Debtors have been filed in accordance with Section 6.6(d) hereof, the Trustee shall be authorized to exercise all powers regarding the Debtors' tax matters, including filing tax returns, to the same extent as if the Trustee were the debtor in possession. The Trustee shall (A) endeavor to complete and file within ninety (90) days of the filing for dissolution by Ames, to the extent not previously filed, the Debtors' final federal, state, and local tax returns, (B) request an expedited determination of any unpaid tax liability of the Debtors under section 505(b) of the Bankruptcy Code for all tax periods of the Debtors ending after the Commencement Date through the liquidation of the Debtors as determined under applicable tax laws, to the extent not previously requested, and (C) represent the interest and account of the Debtors before any taxing authority in all matters, including, but not limited to, any action, suit, proceeding, or audit.

(h)    **Nontransferability of Liquidating Trust Interests.**  The beneficial interests in the Liquidating Trust shall not be certificated and are not transferable (except as otherwise provided in the Liquidating Trust Agreement).

(i)    **Cash.**  The Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; *provided, however,* that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(j)    **Costs and Expenses of the Trustee.**  The costs and expenses of the Liquidating Trust, including the fees and expenses of the Trustee and its retained professionals (with the exception of those incurred in connection with the pursuit of Avoidance Actions), shall be paid first out of the Trustee Expense Fund and then out of the other Liquidating Trust Assets.  Such costs and expenses shall be considered administrative expenses of the Debtors' estates.

(k)    **Compensation of the Trustee.**  The Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

(l)    **Distribution of Liquidating Trust Assets.**  The Trustee shall distribute at least annually and in accordance with the Liquidating Trust Agreement, beginning on the Transfer Date or as soon thereafter as is practicable, the Liquidating Trust Assets on hand (including any Cash received from the Debtors on the Transfer Date, and treating as Cash for purposes of this Section 6.3 any permitted investments under Section 6.3(i) hereof), except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed prior to the time of such distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to

meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets), and (iv) to satisfy other liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement.

(m) **Retention of Professionals by the Trustee.** The Trustee may retain and reasonably compensate counsel and other professionals to assist in its duties as Trustee on such terms as the Trustee deems appropriate without Bankruptcy Court approval. The Trustee may retain any professional who represented parties in interest in the Chapter 11 Cases.

(n) **Federal Income Tax Treatment of Liquidating Trust.**

(i) **Liquidating Trust Assets Treated as Owned by Creditors.** For all federal income tax purposes, all parties (including, without limitation, the Plan Implementation Party, the Trustee, and the holders of General Unsecured Claims) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the holders of Allowed General Unsecured Claims, whether Allowed on or after the Transfer Date, as (A) a transfer of the Liquidating Trust Assets directly to the holders of Allowed General Unsecured Claims in satisfaction of such Claims (other than to the extent allocable to Disputed General Unsecured Claims), followed by (B) the transfer by such holders to the Liquidating Trust of the Liquidating Trust Assets in exchange for beneficial interests in the Liquidating Trust. Accordingly, the holders of such Claims shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Liquidating Trust Assets.

(ii) **Tax Reporting.**

(a) The Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 6.3(n). The Trustee shall also annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns. The Liquidating Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to Sections 6.3(n)(ii)(c) and (d) hereof) to the holders of Allowed General Unsecured Claims in accordance with their relative beneficial interests in the Liquidating Trust.

(b) As soon as possible after the Transfer Date, the Trustee shall make a good faith valuation of the Liquidating Trust Assets. Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties (including, without limitation, the Debtors, the Trustee, and the holders of Allowed Claims) for all federal income tax purposes. The Trustee shall also file (or

cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any governmental unit.

(c)     In the event the holders of Allowed Equity Interests also receive beneficial interests in the Liquidating Trust, allocation of Liquidating Trust taxable income or loss shall be allocated as follows:  Allocations of Liquidating Trust taxable income shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its other assets (valued at their tax book value) to the holders of the Liquidating Trust interests (treating any pending Disputed General Unsecured Claims as if they were Allowed Claims (see Section 6.3(n)(ii)(d) hereof), in each case up to the tax book value of the assets treated as contributed by such holders, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust.  Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of the Liquidating Trust Assets for this purpose shall equal their fair market value on the Transfer Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable tax regulations, and other applicable administrative and judicial authorities and pronouncements.

(d)     Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Trustee of a private letter ruling if the Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Trustee), the Trustee shall (i) treat any Liquidating Trust Assets allocable to, or retained on account of, Disputed General Unsecured Claims as held by one or more discrete trusts for federal income tax purposes (the "Liquidating Trust Claims Reserve"), consisting of separate and independent shares to be established in respect of each Disputed General Unsecured Claim, in accordance with the trust provisions of the Tax Code (section 641 *et seq.*), (ii) treat as taxable income or loss of the Liquidating Trust Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Liquidating Trust that would have been allocated to the holders of Disputed General Unsecured Claims had such Claims been Allowed on the Transfer Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a distribution from the Liquidating Trust Claims Reserve any increased amounts distributed by the Liquidating Trust as a result of any Disputed General Unsecured Claims resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the Liquidating Trust Claims Reserve determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes.  All holders of Claims shall report, for tax purposes, consistent with the foregoing.

(e)     The Trustee shall be responsible for payments, out of the Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets, including the Liquidating Trust Claims Reserve.  In the event, and to the extent, any Cash retained on account of Disputed General Unsecured Claims in the Liquidating Trust Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed General Unsecured Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed General Unsecured Claims, or (ii) to the extent such Disputed General Unsecured Claims have subsequently been resolved, deducted from any amounts distributable by the Trustee as a result of the resolutions of such Disputed General Unsecured Claims.

(f)     The Trustee may request an expedited determination of taxes of the Liquidating Trust, including the Liquidating Trust Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

(o)     **Dissolution.**  The Trustee and the Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all Disputed General Unsecured Claims have been resolved, (ii) all Liquidating Trust Assets have been liquidated, and (iii) all distributions required to be made by the Trustee under the Plan have been made, but in no event shall the Liquidating Trust be dissolved later than three (3) years from the Transfer Date unless the Bankruptcy Court, upon motion within the six (6) month period prior to the third (3rd) anniversary of the Transfer Date (and, in the case of any extension, within six (6) months prior to the end of such extension), determines that a fixed period extension (not to exceed two (2) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets or the dissolution of the Debtors.

(p)     **Indemnification of Trustee.**  The Trustee and its agents and professionals shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts.  Any indemnification claim of the Trustee (and the other parties entitled to indemnification under this subsection (p)) shall be satisfied first from the Trustee Expense Fund and then from the Liquidating Trust Assets.  The Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

(q)     **Closing of Chapter 11 Cases.**  When all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by Final Order, and all of the Liquidating Trust Assets have been distributed in accordance with the Plan, the Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

(r)     **Closing of Chapter 11 Cases by Charitable Gift.**  If at any time the Trustee determines that the expense of administering the Liquidating Trust so as to make a final distribution to its beneficiaries is likely to exceed the value of the assets remaining in the Liquidating Trust, the Trustee shall apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to close the Chapter 11 Cases, (ii) donate any balance to a charitable organization exempt from federal income tax under Section 501(c)(3) of the Tax Code that is unrelated to Ames, the Liquidating Trust, and any insider of the Trustee, and (iii) close the Chapter 11 Cases in accordance with the Bankruptcy Code and Bankruptcy Rules.  Notice of such application shall be given electronically, to the extent practicable, to those parties who have filed requests for notices and whose electronic addresses remain current and operating.

**6.4     Securities Exempt.**  The issuance of the beneficial interests in the Liquidating Trust satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

**6.5     Cancellation of Existing Securities and Agreements.**  Except for purposes of evidencing a right to distributions under the Plan or otherwise provided hereunder, on the Effective Date all the agreements and other documents evidencing the Claims or rights of any holder of a Claim against the Debtors, including all Indentures and notes issued thereunder evidencing such Claims and any options or warrants to purchase Equity Interests, or obligating the Debtors to issue, transfer, or sell Equity Interests or any other capital stock of the Debtors, shall be canceled; *provided, however*, that the Indentures shall continue in effect solely for the purposes of (i) allowing the Indenture Trustees to make any distributions on account of Allowed General Unsecured Claims in Class 3 pursuant to the Plan and perform such other necessary administrative functions with respect thereto, and (ii) permitting the Indenture Trustees to maintain any rights or liens they may have for fees, costs, and expenses under the Indentures.

**6.6     Debtors' Postconfirmation Role; Dissolution.**  The Debtors shall perform each of the following acts as soon as practicable on or after the Effective Date:

(a)     **Payments and Transfers.**  Except as otherwise provided in the Plan, on the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors shall make payments and transfers to holders of Allowed Claims in accordance with Section 5.2(a) hereof.

**(b)** **Administration of Taxes.** Ames shall be responsible for all tax matters of the Debtors until certificates of cancellation, dissolution, or merger for all the Debtors shall have been filed in accordance with Section 6.6(d) hereof.

**(c)** **Claims Administration and Prosecution and Plan Distributions.** Except as otherwise provided in the Plan, the Debtors shall continue to have the power and authority to prosecute and resolve objections to Disputed Claims and to hold, manage, and distribute Plan distributions to the holders of Allowed Claims.

**(d)** **Dissolution.** Within thirty (30) days after its completion of the acts required by the Plan, or as soon thereafter as is practicable, each Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of each Debtor; *provided, however,* that each Debtor shall file with the office of the Secretary of State or other appropriate office for the state of its organization a certificate of cancellation or dissolution, or alternatively, it may be merged with and into another Debtor and so file an appropriate certificate of merger.

**6.7** **Books and Records.** Upon the Effective Date, Ames shall transfer and assign to the Plan Implementation Party full title to, and the Plan Implementation Party shall be authorized to take possession of, all of the books and records of the Debtors. The Plan Implementation Party shall have the responsibility of storing and maintaining books and records transferred hereunder until one year after the date Ames is dissolved in accordance with Section 6.6(d) hereof, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order. The Debtors shall cooperate with the Plan Implementation Party to facilitate the delivery and storage of their books and records in accordance herewith. The Debtors (as well as their current and former officers and directors) shall be entitled to reasonable access to any books and records transferred to the Plan Implementation Party for all necessary corporate purposes, including, without limitation, defending or prosecuting litigation, determining insurance coverage, filing tax returns, and addressing personnel matters. For purposes of this Section, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all of the claims and rights of the Debtors in and to their books and records, wherever located.

**6.8** **Corporate Action.** Upon the Effective Date, the Debtors shall perform each of the actions and effect each of the transfers required by the terms of the Plan, in the time period allocated therefor, and all matters provided for under the Plan that would otherwise require approval of the stockholders, partners, members, directors, or comparable governing bodies of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable governing law) of the states in which the Debtors are incorporated or organized, without any requirement of further action by the stockholders, members, or directors (or other governing body) of the Debtors. Each of the Debtors shall be authorized and directed, following the completion of all disbursements, other

transfers, and other actions required of the Debtors by the Plan, to file its certificate of cancellation, dissolution, or merger as contemplated by Section 6.6(d) hereof. The filing of such certificates of cancellation, dissolution, or merger shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including, without express or implied limitation, any action by the stockholders, members, or directors (or other governing body) of the Debtors.

**6.9** **Effectuating Documents and Further Transactions**. Each of the officers of each of the Debtors is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## ARTICLE VII.

## PROCEDURES FOR DISPUTED CLAIMS

**7.1** **Objections to Claims**. The Plan Implementation Party shall be entitled to object to Administrative Expense Claims, Priority Tax Claims, Secured Claims, Priority Non-Tax Claims, and General Unsecured Claims. On and after the Effective Date, in the event the Plan Implementation Party elects to establish a Liquidating Trust, the Trustee shall be entitled to object to General Unsecured Claims. Any objections to Claims shall be served and filed on or before the later of (i) one hundred twenty (120) days after the Effective Date, and (ii) such date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above. Any and all Disputed Claims shall be estimated under section 502(c) of the Bankruptcy Code with a five (5) page objection plus exhibits, a five (5) page response plus exhibits, and a five (5) page reply plus exhibits. The Bankruptcy Court shall determine each objection on the papers after hearing from each party for twenty (20) minutes per party; the Bankruptcy Court may also grant additional time for proceedings in its sole discretion.

**7.2** **No Distribution Pending Allowance**. Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim (other than the transfer of the Liquidating Trust Assets to the Liquidating Trust in the event the Plan Implementation Party elects to establish a Liquidating Trust). Until such time, with respect to General Unsecured Claims in the event the Plan Implementation Party elects to establish a Liquidating Trust, the Trustee shall withhold from the property to be distributed to holders of beneficial interests in the Liquidating Trust the portion of such property allocable to Disputed General Unsecured Claims and shall hold such property in the Liquidating Trust Claims Reserve in accordance with this Article VII and Section 6.3(n)(ii) hereof. If any Disputed General Unsecured Claims are disallowed, the Liquidating Trust Assets held in the Liquidating Trust Claims Reserve shall be released as and to the extent the Trustee determines such property is no longer necessary to fund unresolved Disputed General Unsecured Claims, and such Liquidating Trust Assets shall

be distributed in accordance with Section 6.3 hereof. In the event the Plan Implementation Party does not elect to establish a Liquidating Trust, to the extent a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the amount asserted by the holder of the Disputed Claim or as previously estimated by the Bankruptcy Court, the excess of the amount of Cash that would have been distributed to the holder of the Disputed Claim if the Claim had been Allowed in full over the amount of Cash actually distributed on account of such Disputed Claim, shall be Available Cash. All Tort Claims shall be deemed Disputed Claims unless and until they are liquidated.

**7.3** **Resolution of Disputed Claims.** Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, following the Effective Date, the Plan Implementation Party shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code) to make and file objections to Claims and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than one hundred twenty (120) days after the Effective Date. From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Plan Implementation Party elects to withdraw any such objection or the Plan Implementation Party and the holder of a Claim elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.

**7.4** **Estimation.** The Plan Implementation Party may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Plan Implementation Party previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Implementation Party may pursue supplementary proceedings to object to the allowance of such Claim. All the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. On and after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved subsequently, without further order of the Bankruptcy Court.

**7.5** **Allowance of Disputed Claims.** If, on or after the Effective Date, any Disputed Claim becomes, in whole or in part, an Allowed Claim, the Plan Implementation Party shall, no later than the fifteenth (15th) Business Day of the first month following the month in which the Disputed Claim becomes an Allowed Claim, distribute to the holder thereof the distributions, if any, that such holder would have

received had its Claim been Allowed on the Effective Date, except as otherwise provided herein.

**ARTICLE VIII.**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**8.1** **Executory Contracts and Unexpired Leases.** On the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected as of the Effective Date, except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date, or (ii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtors prior to the Effective Date.

**8.2** **Approval of Rejection of Executory Contracts and Unexpired Leases.** Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected as of the Effective Date pursuant to the Plan.

**8.3** **Rejection Claims.** In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, the Plan Implementation Party, or any property to be distributed under the Plan or the Liquidating Trust (in the event the Plan Implementation Party elects to establish a Liquidating Trust) unless a proof of claim is filed with the Bankruptcy Court and served upon the Plan Implementation Party on or before the date that is thirty (30) days after the Confirmation Date.

**ARTICLE IX.**

**EFFECTIVENESS OF THE PLAN**

**9.1** **Condition Precedent to Confirmation of Plan.** The following is a condition precedent to the confirmation of the Plan:

        **(a)** The Bankruptcy Court shall have entered a Confirmation Order in form and substance satisfactory to the Debtors.

**9.2** **Conditions Precedent to Effective Date.** The following are conditions precedent to the Effective Date of the Plan:

        **(a)** No stay of the Confirmation Order shall then be in effect and the Debtors shall have sufficient Cash to pay the sum of (i) Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Priority

Non-Tax Claims, and the Debtors' professional fees that have not been paid, (ii) an amount that would be required to distribute to the holders of Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Secured Claims, and Disputed Priority Non-Tax Claims if all such Claims are subsequently Allowed, as set forth more fully in Article VII hereof, and (iii) an amount that would be required to satisfy all the Debtors' costs and expenses in connection with the Debtors' obligations under the Plan; or

        **(b)**     The Plan Implementation Party, upon consultation with the Committee, shall have determined the Effective Date may occur.

     **9.3**    **Satisfaction of Conditions.**  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If the Plan Implementation Party decides, after consultation with the Committee, that none of the conditions precedent set forth in Section 9.2 hereof can be satisfied and the occurrence of such conditions is not waived or cannot be waived, then the Plan Implementation Party shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

     **9.4**    **Effect of Nonoccurrence of Conditions to Consummation.**  If each of the conditions to consummation and the occurrence of the Effective Date has not been satisfied or duly waived on or before the first Business Day that is one hundred twenty (120) days after the Confirmation Date, or such later date as shall be agreed by the Debtors and the Committee, the Confirmation Order may be vacated by the Bankruptcy Court.  If the Confirmation Order is vacated pursuant to this Section, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims against any of the Debtors.

**ARTICLE X.**

**EFFECT OF CONFIRMATION**

     **10.1**    **Vesting of Assets.**  As of the Effective Date, the property of the Debtors' estates shall vest in the Plan Implementation Party.  In the event the Plan Implementation Party elects to establish a Liquidating Trust, in accordance with Article VI hereof and subject to the exceptions contained therein, (i) the Liquidating Trust Assets shall be transferred to the Liquidating Trust, (ii) from and after the Effective Date, the Trustee may dispose of the assets of the Liquidating Trust free of any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Plan and the Liquidating Trust Agreement, and (iii) as of the Effective Date, all assets of the Debtors and the Liquidating Trust shall be free and clear of all Claims, except as provided in the Plan or the Confirmation Order.

     **10.2**    **Release of Assets.**  Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtors and their assets and properties.  Thereafter, jurisdiction

of the Bankruptcy Court shall be limited to the subject matter set forth in Article XI hereof.

**10.3** **Binding Effect.** Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

**10.4** **Term of Injunctions or Stays.** Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases.

**10.5** **Causes of Action.** Except as otherwise provided in the Plan, on and after the Effective Date, the Plan Implementation Party will have the exclusive right to enforce any and all Causes of Action and Avoidance Actions against any person; *provided, however,* in the event the Plan Implementation Party elects to establish a Liquidating Trust, the Trustee will have the exclusive right to enforce any and all Avoidance Actions against any person. The Plan Implementation Party may pursue, abandon, settle, or release any or all Causes of Action and Avoidance Actions, as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court. The Plan Implementation Party may, in its sole discretion, offset any such claim held against a person against any payment due such person under the Plan; *provided, however*, in the event the Plan Implementation Party elects to establish a Liquidating Trust, the Trustee may, in its sole discretion, offset any claim with respect to Avoidance Actions held against a person against any payment due such person under the Plan; and *provided further, however*, that any claims of the Debtors arising before the Commencement Date shall first be offset against Claims against the Debtors arising before the Commencement Date.

**10.6** **Injunction.** On and after the Confirmation Date, all persons are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of or respecting any claim, debt, right, or cause of action of the Debtors for which the Plan Implementation Party retains sole and exclusive authority to pursue in accordance with the Plan.

**10.7** **Injunction Against Interference with Plan.** Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

## ARTICLE XI.

## RETENTION OF JURISDICTION

**11.1** **Jurisdiction of Bankruptcy Court.** The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To hear and determine motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b) To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date, including, without limitation, any proceeding to recover a Cause of Action or Avoidance Action;

(c) To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e) To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g) To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h) To hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(i) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Liquidating Trust and the Liquidating Trust Agreement (in the event

the Plan Implementation Party elects to establish a Liquidating Trust), any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)  To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(k) To recover all assets of the Debtors, property of the Debtors' estates, and the Liquidating Trust Assets (in the event the Plan Implementation Party elects to establish a Liquidating Trust), wherever located;

(l)  To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, matters with respect to any taxes payable by a trust or reserve established in furtherance of the Plan and the expedited determination of tax under section 505(b) of the Bankruptcy Code with respect to the Debtors or any trust or reserve established in furtherance of the Plan);

(n) To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

(o) To enter a final decree closing the Chapter 11 Cases.

### ARTICLE XII.

### MISCELLANEOUS PROVISIONS

**12.1**  **Dissolution of Committee**.  The Committee shall dissolve on the Effective Date, except that the Committee and its professionals shall have the right to pursue, review, and object to any applications for compensation and reimbursement of expenses filed in accordance with Section 2.2 hereof.

**12.2**  **Substantial Consummation**.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**12.3**  **Effectuating Documents and Further Transactions**.  Mr. Rolando de Aguiar, the President and Chief Wind Down Officer of Ames, and an officer of each of the Debtors, is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan.

**12.4** **Exemption from Transfer Taxes.**  Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan (including, in the event the Plan Implementation Party elects to establish a Liquidating Trust, transfers of assets to and by the Liquidating Trust) shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

**12.5** **Limited Release.**  As of the Effective Date, the Debtors release all present and former directors and officers of the Debtors who were directors and/or officers, respectively, on or after the Commencement Date, and any other Persons who serve or served as members of management of the Debtors on or after the Commencement Date, and all post-Commencement Date advisors, consultants, or professionals of or to the Debtors, the Committee, and the Indenture Trustees from any and all Causes of Action held by, assertable on behalf of, or derivative from the Debtors, in any way relating to the Debtors, the Chapter 11 Cases, the Plan, negotiations regarding or concerning the Plan, and the ownership, management, and operation of the Debtors, except for willful misconduct (including, but not limited to, conduct that results in a personal profit at the expense of the Debtors' estates) or gross negligence; *provided, however,* that the foregoing shall not operate as a waiver of or release from any Causes of Action arising out of any express contractual obligation owing by any former director, officer, or employee of the Debtors or any reimbursement obligation of any former director, officer, or employee with respect to a loan or advance made by the Debtors to such former director, officer, or employee; and *provided further, however,* nothing herein or in the Confirmation Order shall affect a release of any claim against the parties released in this Section 12.5 by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Tax Code, the environmental laws, or any criminal laws of the United States or any state and local authority, nor shall anything herein or in the Confirmation Order enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceeding against any such person or entity for any liability whatsoever, including, without limitation, any claim, suit, or action arising under the Tax Code, the environmental laws, or any criminal laws of the United States or any state or local authority.

**12.6** **Exculpation.**  Neither the Debtors, the Plan Administrator, the Trustee (in the event the Plan Implementation Party elects to establish a Liquidating Trust), the Committee, the Indenture Trustees, nor any of their respective members, officers, directors, employees, advisors, professionals, or agents, shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of the Chapter 11 Cases, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Debtors, the Plan

Administrator, the Trustee (in the event the Plan Implementation Party elects to establish a Liquidating Trust), the Committee, the Indenture Trustees, and each of their respective members, officers, directors, employees, advisors, professionals, and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### 12.7 Post-Confirmation Date Fees and Expenses.

**(a)** **Fees and Expenses of Professionals.** The Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses, incurred after the Confirmation Date, of the professional persons employed by the Debtors and the Committee in connection with the implementation and consummation of the Plan, the claims reconciliation process, and any other matters as to which such professionals may be engaged. After the Effective Date, the Plan Implementation Party shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses, incurred after the Effective Date, of the professional persons employed by the Plan Implementation Party in connection with the implementation and consummation of the Plan, the claims reconciliation process, and any other matters as to which such professionals may be engaged. The fees and expenses of such professionals shall be paid within ten (10) Business Days after submission of a detailed invoice therefor. If the Debtors or the Plan Implementation Party, as the case may be, disputes the reasonableness of any such invoice, the Debtors or the Plan Implementation Party, as the case may be, shall timely pay the undisputed portion of such invoice, and the Debtors, the Plan Implementation Party, or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice.

**(b)** **Fees and Expenses of the Trustee.** In the event the Plan Implementation Party elects to establish a Liquidating Trust, the fees and expenses of the Trustee shall be paid in accordance with Section 6.3(j) hereof.

### 12.8 Payment of Statutory Fees. On the Effective Date, and thereafter as may be required, the Plan Implementation Party shall pay, and, in the event the Plan Implementation Party elects to establish a Liquidating Trust, after the Effective Date, the Trustee shall pay solely out of the Trustee Expense Fund, all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

### 12.9 Modification of Plan. Upon reasonable notice to the Committee, the Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Plan Implementation Party may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as

may be necessary to carry out the purposes and effects of the Plan.  Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court; *provided, however,* that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

**12.10 Revocation or Withdrawal of Plan.**  The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date.  If the Debtors take such action, the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any other person in any further proceedings involving the Debtors.

**12.11 Courts of Competent Jurisdiction.**  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**12.12 Severability.**  If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.13 Governing Law.**  Except to the extent the Bankruptcy Code or other federal law is applicable, or to the extent a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law thereof.

**12.14 Successors and Assigns.**  All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

**12.15 Time.**  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**12.16** **Notices**.  All notices, requests, and demands to or upon the Debtors, the Plan Administrator, or the Trustee (in the event the Plan Implementation Party elects to establish a Liquidating Trust) to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors, to:

Ames Department Stores, Inc.
40 Cold Spring Road
Rocky Hill, CT  06067
Attn:  Rolando de Aguiar
Telephone:  (860) 257-2010
Telecopier:  (860) 257-2002

     -and-

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Attn:    Martin J. Bienenstock, Esq.
       Deryck A. Palmer, Esq.
Telephone:  (212) 310-8000
Telecopier:  (212) 310-8007

-and-

Togut, Segal & Segal LLP
One Penn Plaza
New York, New York 10119
Attn: Albert Togut, Esq.
Telephone: (212) 594-5000
Telecopier: (212) 967-4258

If to the Plan Administrator or Trustee, to the address(es)
designated in the Confirmation Order

Dated:     New York, New York
           December 6, 2004

Respectfully submitted,


AMES DEPARTMENT STORES, INC.

By:     /s/ Rolando de Aguiar
            Name: Rolando de Aguiar
            Title: President and Chief
            Wind Down Officer

AMES MERCHANDISING CORPORATION
AMESPLACE.COM, INC.
AMES REALTY II, INC.
AMES TRANSPORTATION SYSTEMS, INC.

BY: AMES DEPARTMENT STORES, INC., as agent for each of
the foregoing entities

By:     /s/ Rolando de Aguiar
            Name: Rolando de Aguiar
            Title: President and Chief
            Wind Down Officer