DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333
Martin J. Bienenstock (MB 3001)
Timothy Q. Karcher (TK 6173)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11 Case No.** |
| **AMES DEPARTMENT STORES, INC.,** *et al.*, | : | **01-42217 (REG)** |
| | : | |
| **Debtors.** | : | **Jointly Administered** |
| | : | |

-------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE, RULE 2014(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND RULES 2014-1, 2016-1, AND 2090-1(e) OF THE LOCAL BANKRUPTCY RULES SUBSTITUTING DEWEY & LEBOEUF LLP AS ATTORNEYS FOR THE DEBTORS NUNC PRO TUNC TO DECEMBER 7, 2007**

PLEASE TAKE NOTICE that, in connection with the annexed application, dated February 4, 2008 (the "Application"), of Ames Department Stores, Inc. and its subsidiaries, as debtors and debtors in possession (collectively, "Ames" or the "Debtors"), for entry of an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"); Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1, 2016-1, and 2090-1(e) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules") authorizing the employment of Dewey & LeBoeuf LLP ("D&L") as the Debtors' general bankruptcy attorneys and substituting D&L for Weil, Gotshal & Manges LLP ("WG&M"), as more fully set forth in the Application; and the supporting Affidavit of Timothy Q. Karcher,

sworn to February 4, 2008, annexed to the Application as Exhibit "A"; the Debtors will present

the proposed order, annexed to the Application at Exhibit "B" (the "Order") to the Honorable

Robert E. Gerber, United States Bankruptcy Judge, for signature on **February 19, 2008, at**

**12:00 noon (Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief

requested in the Application shall be in writing, shall conform to the Bankruptcy Rules and Local

Bankruptcy Rules, shall set forth the name of the objectant, the nature and amount of claims or

interests held or asserted by the objectant against the Debtors' estates or property, the basis for

the objection, and the specific grounds therefor, and shall be filed with the Bankruptcy Court

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and,

by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format

(PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy

delivered directly to Chambers) and served in accordance with General Order M-242, and shall

further be served upon (i) Dewey & LeBoeuf LLP, 1301 Sixth Avenue, New York, New York

10019 (Attn: Martin J. Bienenstock, Esq. & Timothy Q. Karcher, Esq.), (ii) the Office of the

United States Trustee, 33 Whitehall Street, 21st floor, New York, New York 10004 (Attn:

Gregory Zipes, Esq.), (iii) Otterbourg, Steindler, Houston & Rosen, PC, 230 Park Avenue, New

York, New York 10169 (Attn: Scott Hazan, Esq.), (iv) Winston & Strawn, 200 Park Avenue,

New York, New York 10166 (Attn: Michael Emrich, Esq.), (v) Morgan, Lewis & Bockius LLP,

101 Park Avenue, New York, New York 10178 (Attn: Richard S. Petretti, Esq.), and (vi) Weil,

Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Michele

Meises, Esq. and Shai Waisman, Esq., so as to be actually received no later than **February 19,**

**2008, at 11:30 a.m. (Eastern Time)**. Unless objections are received by that time, there will not be a hearing, and the Order may be signed.

PLEASE TAKE FURTHER NOTICE that if a written objection is timely filed, a hearing will be held at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, at a date and time to be established by the Court. The moving and objecting parties are required to attend the hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:   New York, New York
        February 4, 2008

                         DEWEY & LEBOEUF LLP

                         By: /s/ Timothy Q. Karcher
                         Martin J. Bienenstock (MB 3001)
                         Timothy Q. Karcher (TK 6173)
                         1301 Avenue of the Americas
                         New York, New York 10019
                         Telephone: (212) 424-8000
                         Facsimile: (212) 424-8500

                         ATTORNEYS FOR THE DEBTORS AND
                         DEBTORS IN POSSESSION

NYC653891.5

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 424-8000
Facsimile: (212) 424-8500
Martin J. Bienenstock (MB 3001)
Timothy Q. Karcher (TK 6173)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x
In re                  :
                        :       **Chapter 11 Case No.**
**AMES DEPARTMENT STORES, INC.,** *et al.*,  :       **01-42217 (REG)**
                        :
             **Debtors.**     :       **Jointly Administered**
                        :
--------------------------------------------------------------x

**APPLICATION FOR ENTRY OF AN ORDER**
**PURSUANT TO SECTIONS 327(a) AND 328(a) OF**
**THE BANKRUPTCY CODE, RULE 2014(a) OF THE FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE, AND RULES 2014-1, 2016-1, AND 2090-1(e) OF THE**
**LOCAL BANKRUPTCY RULES SUBSTITUTING DEWEY & LEBOEUF LLP**
**AS ATTORNEYS FOR THE DEBTORS NUNC PRO TUNC TO DECEMBER 7, 2007**

Ames Department Stores, Inc. and its subsidiaries, as debtors and debtors in

possession (collectively, "Ames" or the "Debtors"), respectfully represent:

**SUMMARY OF RELIEF REQUESTED**

1.       By this application (the "Application"), the Debtors request that this Court

enter an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the

"Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rules 2014-1, 2016-1, and 2090-1(e) of the Local Bankruptcy Rules

for the United States Bankruptcy Court for the Southern District of New York (the "Local

Bankruptcy Rules"), authorizing the employment and retention of Dewey & LeBoeuf LLP

("D&L" or the "Firm") as their bankruptcy counsel and substituting D&L for Weil, Gotshal & Manges LLP ("WG&M") *nunc pro tunc* to December 7, 2007.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b) (2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.      On August 20, 2001 (the "Commencement Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage their properties as debtors in possession pursuant to section 1107(a) of the Bankruptcy Code.

Retention of WG&M

4.      Pursuant to the Order Granting Motion to Approve the Retention of WG&M as Attorneys for the Debtors on Certain Terms and Conditions, dated August 20, 2001, the Debtors were authorized to retain WG&M under a general retainer pursuant to section 327(a) of the Bankruptcy Code as their attorneys to render legal services in the prosecution of their chapter 11 cases on an interim basis, with such retention to become permanent following a hearing to consider any objections to the Debtors' application for authority to employ WG&M.

5.      Upon request of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), WG&M submitted a supplemental affidavit, dated August 27, 2001, disclosing additional information concerning certain of WG&M's existing clients that are parties in interest in these cases.  No objections were filed to WG&M's retention and, pursuant to the Order Approving the Retention of WG&M as attorneys for the Debtors, dated October 4, 2001, the Debtors were authorized to retain WG&M on a final basis.

6.    By separate order, dated October 3, 2001, the Debtors were authorized to retain Togut, Segal & Segal, LLP ("TSS") as co-attorneys in these chapter 11 cases.

The Debtors' Progress Towards a Confirmable Chapter 11 Plan

7.    Prior to the Commencement Date, the Debtors were the largest regional discount retailer in the United States. The Debtors operated 452 stores in nineteen contiguous states in the Northeast, Midwest, and Mid-Atlantic regions, as well as the District of Columbia under the "Ames" name. The Debtors' stores offered a wide range of both brand name and other quality merchandise for the home and family at prices below those of conventional department stores and specialty retailers.

8.    In August 2002, the Debtors determined to conduct going out of business sales (the "GOB Sales") in all their remaining store locations. The Debtors believed that an orderly wind down of the Debtors' affairs in chapter 11 would maximize the value of the estates with the smallest increase in liabilities. This action was taken in close coordination with WG&M, TSS, the statutory creditors' committee appointed in the Debtors' chapter 11 cases (the "Creditors' Committee"), and lenders under the Debtors' debtor in possession financing facilities.

9.    Contemporaneous with the decision to conduct the GOB Sales, the Debtors suspended payment of administrative expenses of trade vendors. This decision was made to preserve the assets of the estates to ensure a fair distribution to all creditors, including creditors holding administrative expense claims.

10.    The proceeds received by the Debtors from the GOB Sales and that certain Revolving Credit, Guaranty, and Security Agreement, dated as of September 27, 2002, between the Debtors and Kimco Funding LLC, modified by that certain Amendment and Waiver

- 3 -

Agreement, dated October 15, 2002 (the "New Kimco DIP Facility") enabled the Debtors to fully satisfy their obligations under the (i) Debtor-In-Possession Credit Agreement, dated August 20, 2001, among the Debtors, General Electric Capital Corporation, as Agent and a Lender, and the other lenders from time to time a party thereto, and (ii) Debtor-in-Possession Credit Agreement, dated August 20, 2001, between the Debtors and Kimco Funding LLC, as Agent and Lender. Moreover, the proceeds received from the sale of the Debtors' real estate interests to date have enabled the Debtors to fully pay the principal and interest obligations under the New Kimco DIP Facility. Accordingly, the Debtors have already satisfied all of their secured claims.

11.    In addition to satisfying the bulk of their secured claims, since the completion of the GOB Sales, the Debtors have (i) rejected or assumed and assigned all of their unexpired leases of nonresidential real property (the "Unexpired Leases") in accordance with section 365 of title 11 of the Bankruptcy Code, (ii) fixed, settled, and reconciled the vast majority of administrative expense claims, and (iii) sold their remaining real estate holdings.

12.    The Debtors have also been in the process of reconciling administrative expense claims. In December 2004, the Debtors began making initial interim distributions to holders of administrative expense claims in an amount equal to 40% of the allowed amount of such claims, with the exception of those holders who are defendants in a Preference Action, as defined herein, or whose predecessors in interest are defendants in a Preference Action. The Debtors continue to work with administrative expense claimholders to reconcile and satisfy administrative expense claims, and as discussed below, the Debtors recently made a subsequent distribution to holders of administrative expense claims in an amount equal to 12% of the allowed amount of such claims.

- 4 -

13.     On December 6, 2004, Ames filed its Chapter 11 Plan (the "Plan"), and a related Disclosure Statement for Debtors' Chapter 11 Plan (the "Disclosure Statement"). While the Debtors believe the Plan ultimately will be confirmed by this Court, they have refrained from soliciting votes pending a determination as to the solvency of the Debtors' estates and recoveries under the Plan.

Expansion of WG&M's Retention to
Provide Preference Action Legal Services

14.     Subsequent to the Commencement Date, the Debtors identified more than 2,000 prepetition transfers, which could potentially be avoided pursuant to sections 547, 550, and 551 as well as other relevant provisions of the Bankruptcy Code (the "Preference Actions"). Upon consultation with WG&M, TSS, the Creditors' Committee, and other professionals, the Debtors determined that the right to recover these transfers represented a significant asset, which could be pursued for the benefit of the estates and creditors.

15.     Because of their extensive knowledge of the Debtors' business operations, familiarity with their chapter 11 cases, and ability to devote appropriate resources to the prosecution of these Preference Actions, the Debtors directed WG&M and TSS to pursue the prosecution and resolution of the identified potentially preferential payments as Preference Actions. However, to protect the estates from the risk of non-recovery in each Preference Action, the Debtors requested an alternate fee arrangement whereby the estates would only pay fees contingent on recoveries, and WG&M and TSS agreed to the Debtors' request.

16.     Accordingly, the Debtors sought authorization from this Court to amend the retentions of WG&M and TSS, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, to permit WG&M and TSS to render legal services in connection with the prosecution of the Preference Actions. At a later date, the Debtors also sought to retain Storch Amini &

Munves, P.C. ("SAM") to assist the Debtors in the prosecution of the Preference Actions.[1]  By order, dated March 25, 2003, this Court expanded the scope of WG&M's retention to permit WG&M to render legal services in connection with the prosecution of the Preference Actions. Subsequently, WG&M commenced more than 1,600 Preference Actions on behalf of the Debtors against those entities which did not consensually resolve their preference liabilities after receiving demand letters from the Debtors.

17.    On June 14, 2007, this Court entered an order directing that SAM be substituted as Debtors' counsel in all remaining Preference Actions.  On June 25, 2007, this Court entered an order directing that all remaining Preference Actions be referred to non-binding mediation.

The Debtors' Current Initiatives

18.    In order to maximize recoveries for creditors, the Debtors have instituted the following initiatives (the "Initiatives"):

- The Debtors have commenced an action against certain insurance companies, including the St. Paul Travelers Companies ("Travelers") and Lumbermens Mutual Casualty Company ("Lumbermens"), seeking, among other things, (i) a declaratory judgment fixing the amount of collateral necessary to secure the Debtors' insurance obligations, and (ii) turnover of excess collateral for the benefit of the Debtors' estates and creditors (the "Travelers Litigation").  The Debtors have reached an interim settlement with Travelers (the "Interim Travelers Settlement"), which has been embodied in a Stipulation and Order filed with the Court on May 25, 2007, and approved in November, 2007.  As a result of the Interim Travelers Settlement, the Debtors were able to make an additional 12% distribution to holders of administrative expense claims.

- The Debtors successfully defended their position before the United States District Court for the Southern District of New York that section 502(d) of the Bankruptcy Code disallows both general unsecured claims as well as administrative expense claims held by defendants in avoidance actions until the underlying avoidance action is resolved and the transferee has paid the

---

[1] By order, dated July 21, 2003, the Court authorized the employment and retention of SAM as special counsel to assist in analyzing and litigating certain Preference Actions.

amount, or turned over any such property, for which the transferee is liable to the Debtors. Both this Court and the District Court rejected the position of ASM Capital, LP ("ASM") that section 502(d) does not apply to administrative expense claims and that it is entitled to the allowance and payment of certain administrative expense claims purchased from a defendant in an avoidance action notwithstanding the failure of the defendant to turn over any such property for which it is liable (the "502(d) Issue"). ASM is appealing the 502(d) Issue to the United States Court of Appeals for the Second Circuit. The 502(d) issue has been fully briefed. Oral argument has not been scheduled to date.

- The Debtors are in the process of seeking the release of an $11.5 million escrow (the "LFD Reserve"), which the Debtors established to satisfy certain indemnification obligations to its pre- and postpetition lender, GE Capital Corporation ("GECC"), for certain alleged liability to LFD Operating, Inc. ("LFD"). LFD sought a declaratory judgment that net proceeds from the sale of LFD merchandise in Ames stores (the "Net Sales Proceeds"), totaling $8.9 million, were LFD's property, and hence not part of Ames's bankruptcy estate. The Debtors have consistently objected to LFD's assertion. On August 10, 2005, the United States Court of Appeals for the Second Circuit affirmed the decision of the district court affirming an order and judgment of this Court dismissing LFD's claims against Ames. *See LFD Operating Inc. v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*, 144 Fed. Appx. 900, 901 (2d Cir. 2005). LFD also commenced an action in state court against GECC for the return of the Net Sales Proceeds. If LFD prevails in its action against GECC, GECC will seek to enforce the Debtors' indemnification obligation. Like the Debtors, GECC believes there is no liability for the Net Sales Proceeds and has defended the action against LFD. However, the action is not yet fully resolved.[2]

---

2 GECC removed the matter to this Court and filed a motion for summary judgment to dismiss the action. GECC's motion for summary judgment was granted on June 6, 2006. *See LFD Operating, Inc. v. Gen. Elec. Capital Corp. (In re Ames Dep't Stores, Inc.)*, Ch. 11 Case No. 01-42217 (REG), Adv. No. 01-8153 (AJG), 2006 WL 2400107 (Bankr. S.D.N.Y. June 6, 2006). LFD has appealed the order granting summary judgment, which remains pending. While the Debtors believe the matter ultimately will be resolved in their favor, GECC will not release the LFD Reserve until the matter is final. The Debtors are working in cooperation with GECC to resolve the dispute.

## RELIEF REQUESTED

### I.   Selection of D&L

19.   Effective October 1, 2007, Dewey Ballantine LLP and LeBoeuf, Lamb, Greene & MacRae LLP, two of the world's most respected law firms, merged to form Dewey & LeBoeuf LLP.  Today, D&L is an international law firm headquartered in New York with more than 1,400 lawyers in 12 countries including the United States, United Kingdom, Belgium, France, Germany, Italy, Poland, China, South Africa, Kazakhstan, Russia, and Saudi Arabia. D&L has the knowledge and resources to address the most complex and challenging legal issues.

20.   Since the Commencement Date, these chapter 11 cases have been supervised by Martin J. Bienenstock, who was a partner with WG&M and the co-chair of WG&M's Business Finance and Restructuring department.  In addition, Timothy Karcher, who was a senior associate with WG&M, held a significant and leading role in the conduct of the Debtors' chapter 11 cases.  Effective December 7, 2007, Mr. Bienenstock became a retired partner of WG&M and Mr. Karcher, along with their colleague Judy Liu, resigned and withdrew from WG&M.  They all joined D&L.

21.   For the reasons set forth herein, the Debtors have requested that D&L assume the role previously held by WG&M.  To that end, the Debtors requested that WG&M transmit to D&L all records and files, whether written or electronic, related to the Debtors' chapter 11 cases.  Consistent with the Debtors' intentions, D&L has been acting as counsel to the Debtors since December 7, 2007, the date Mr. Bienenstock and Mr. Karcher joined D&L. Accordingly, the Debtors seek Court approval, pursuant to Bankruptcy Code sections 327(a) and 328(a), Bankruptcy Rule 2014(a), and Local Bankruptcy Rules 2014-1, 2016-1, and 2090-1(e),

to employ D&L as their attorneys in connection with the continued prosecution of the Debtors' chapter 11 cases, *nunc pro tunc* to December 7, 2007.[3]

22.     Mr. Bienenstock has lectured and written extensively in connection with business reorganization, chapter 11 and all aspects of cases under the Bankruptcy Code, and is the author of the text <u>Bankruptcy Reorganization</u>. He is also a faculty member at Harvard Law School, where he teaches Corporate Reorganization and was selected to hold the title of Robert B. and Candice J. Haas Lecturer. Mr. Bienenstock has vast experience in the prosecution of numerous chapter 11 cases. Moreover, Mr. Bienenstock and Mr. Karcher are extremely familiar with the Debtors' businesses, financial affairs, the circumstances surrounding the Debtors' chapter 11 filings, and the Initiatives.

23.     Mr. Bienenstock currently serves as Chairman of D&L's Business Solutions & Governance ("BSG") department. The BSG department is a multidisciplinary practice group with 55 members throughout D&L. Twenty-four members of the BSG department, including Ms. Liu and Mr. Karcher, are resident in the firm's New York office. The members of the BSG department, as well as a number of other D&L attorneys throughout the firm, have substantial experience and expertise in chapter 11 cases involving business entities, as well as vast expertise in the areas of corporate law, finance, litigation, and other fields that may

---

[3] There was some unavoidable delay in presenting this application to the Court. The delay was occasioned by two factors, the first was the intervening holidays, the second was the complexity of D&L's conflicts system as a result of the recent merger, which requires all potential conflicts to be run through legacy Dewey Ballantine LLP's conflicts system and legacy LeBoeuf, Lamb, Greene & MacRae LLP's conflicts system. This process, which ensures the conflicts check is thorough, is significantly more time consuming. The Debtors believe the delay has prejudiced no party, as counsel to the Committee, Travelers, and Lumbermens, as well as various individuals have continued their discussions with Mr. Bienenstock and Mr. Karcher in a seamless manner. Moreover, relatively few hours have been billed to this matter as a result of, among other things, the intervening holidays and the current posture of these chapter 11 cases. Additionally, the Debtors and Mr. Karcher advised the Committee and the U.S. Trustee in early December, 2007 that Ames had determined to substitute D&L for WG&M.

- 9 -

be required by the Debtors in these cases. Accordingly, D&L has the resources necessary to manage chapter 11 cases of this size and scope.

24.     In addition, D&L has extensive expertise, experience, and knowledge practicing before bankruptcy courts. Attorneys from D&L have represented debtors, creditors, purchasers, and other parties-in-interest before courts in the Southern District of New York, the Second Circuit, and in numerous other jurisdictions throughout the country. As a consequence, D&L brings to this case a high level of expertise and experience that inures to the benefit of the Debtors and all parties in interest.

25.     Accordingly, the Debtors believe D&L possesses the requisite expertise to serve as general bankruptcy counsel in these cases, and can do so in an efficient and cost-effective manner. For these reasons, the Debtors have selected D&L to replace WG&M as their counsel. In addition, for the reasons set forth above, sufficient cause exists to warrant the replacement of WG&M as Debtors' counsel in accordance with the requirements of Local Rule 2090-1(e).

## II.     Services to be Rendered

26.     The employment of D&L is necessary to assist the Debtors in executing faithfully their duties as debtors and debtors in possession. D&L will utilize partners and associates in various areas of expertise to prosecute these cases. Subject to further order of this Court, the professional services that D&L may render to the Debtors as their general bankruptcy counsel, as the Debtors may request from time to time, include, without limitation:

(a)     advising the Debtors with respect to their powers and duties as debtors-in-possession in the continued operation of their businesses;

(b)     advising the Debtors with respect to all general bankruptcy matters;

(c) preparing on behalf of the Debtors all necessary applications, answers, orders, reports, and papers in connection with the administration of their estates;

(d) representing the Debtors at all critical hearings on matters relating to their affairs and interests as debtors-in-possession before this Court, any federal or state courts or administrative panels, any appellate courts, the United States Supreme Court, and protecting the interests of the Debtors;

(e) prosecuting and defending litigated matters that may arise during these cases, including such matters as may be necessary for the protection of the Debtors' rights, the preservation of estate assets, or the resolution of the Debtors' chapter 11 cases;

(f) prosecuting and implementing the Plan;

(g) negotiating appropriate transactions and preparing any necessary documentation related thereto;

(h) advising, assisting and negotiating the sale of all or part of the Debtors' remaining assets pursuant to 11 U.S.C. §363 or the Plan;

(i) representing the Debtors on matters relating to the assumption or rejection of any remaining executory contracts and unexpired leases;

(j) advising the Debtors with respect to corporate, securities, real estate, litigation, labor, finance, insurance, regulatory, tax, healthcare and other legal matters which may arise during the pendency of these cases; and

(k) performing all other legal services that are necessary for the efficient and economic administration of these cases.

27. D&L will not duplicate any efforts of TSS or any other counsel or professionals retained by the Debtors.  In addition, D&L will work with TSS, the Debtors, the Creditors' Committee, and other professionals to efficiently manage these chapter 11 cases and thereby reduce the costs of administering these estates.

28. Subject to the Court's approval of this Application, D&L has indicated a willingness to serve as the Debtors' counsel and to perform the services described above.

## III.    Professional Fees and Expenses.

29.     Subject to Court approval, and in accordance with Bankruptcy Code section 330(a), applicable Bankruptcy Rules, and the standing orders and Local Bankruptcy Rules of this Court, the Debtors propose to pay D&L its customary hourly rates in effect from time to time, plus reimbursement of actual, necessary expenses incurred by D&L in the course of the representation.  Such rates are set forth below and in the accompanying Affidavit of Timothy Q. Karcher (the "Karcher Affidavit"), annexed hereto as Exhibit "A." The Debtors are advised that the firm's hourly are subject to periodic increases in the normal course of the firm's business.  D&L will give prior notice to the Debtors of any such periodic increases.

30.     The Debtors anticipate that the following D&L attorneys, resident in the firm's New York office, will primarily assist the Debtors in these jointly administered chapter 11 cases:

| Professional | Fee (per hour) |
| --- | --- |
| Martin Bienenstock (Partner) | $950 |
| Timothy Karcher (Partner) | $625 |
| Samuel Kohn (Associate) | $595 |
| Jeffrey Amato (Associate) | $470 |
| Jeffrey Chubak (Associate) | $325 |

31.     D&L's hourly rates for U.S. associates range from $325 per hour to $575 per hour.  Current hourly rates for partners of D&L likely to work on this matter range from $625 to $950.  Current hourly rates for paralegals of D&L likely to work on this matter range from $175 to $230.   These rates represent D&L's hourly rates for work of this nature and are subject to periodic adjustments.  The Debtors understand that other attorneys, paralegals, and staff at D&L may serve the Debtors from time to time in connection with these cases as the need arises.

- 12 -

32.     Consistent with the firm's policy with respect to its other clients, D&L will charge the Debtors for all legal services provided and for other charges and disbursements incurred in connection with D&L's rendition of legal services. These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees, and other fees related to trials, hearings, and other proceedings which may arise from time to time in these cases.

33.     D&L has not requested, and will not seek, a retainer in connection with services rendered and expenses incurred on behalf of the Debtors.

34.     D&L intends to apply to the Court for allowance of compensation for professional services and reimbursement of expenses incurred in these cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the standing orders and Local Bankruptcy Rules of this Court, including the Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases (M-151) and the Standing Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals (M-219) and the United States Trustee's Guidelines concerning allowance of out-of-pocket expenses.

35.     D&L has agreed to accept as compensation such sums as may be allowed by the Court on the basis of (a) the professional time spent, (b) the rates charged for such services, (c) the necessity of such services to the administration of the estates, (d) the reasonableness of the time within which the services were performed in relation to the results achieved, and (e) the complexity, importance, and nature of the problems, issues, or tasks addressed in these cases.

NYC654113.7

36.     No promises have been received by D&L or any member, counsel, or associate thereof as to payment or compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.  D&L has no agreement with any other entity to share with such entity any compensation received by D&L or by any such entity.

## IV.     Disinterestedness of Professionals

37.     As set forth in the Karcher Affidavit, D&L has undertaken a detailed database and electronic search of the legacy Dewey Ballantine LLP and legacy LeBoeuf, Lamb, Greene & MacRae LLP conflicts systems to determine and to disclose whether it has connections with any significant creditors or parties in interest of the Debtors' chapter 11 cases ("Interested Parties").[4]

38.     Based on this conflicts check, D&L does not represent any of the Interested Parties or any other entity in matters adverse to the Debtors or related to these cases.[5] To the extent that this review has indicated that D&L represents or has previously represented any of the Interested Parties in matters unrelated to these cases, such persons and entities are identified in Exhibit "A" to the Karcher Affidavit.

39.     D&L regularly participates in a wide-range of bankruptcy-related, corporate, and litigation matters in which other professionals retained by the estates are involved as clients of the firm or as advisors to entities with interests in matters unrelated to the Debtors in which D&L may act as attorneys.  In addition, D&L represents several insurance companies of the Debtors regarding a broad array of issues, including, among others, corporate governance,

---

[4] Given the current posture of the Debtors' chapter 11 cases, "significant" creditors or parties in interest include all creditors holding administrative expense claims against the Debtors' estates and all general unsecured creditors who have asserted claims, or whose claims have been scheduled, in an amount equal to or greater than $500,000.

[5] Attorneys of legacy Dewey Ballantine LLP that are no longer with the Firm represented the Debtors in their previous chapter 11 cases from 1990 until 1994.

NYC654113.7

regulatory, compliance, insolvency, finance, securities, and litigation. D&L has identified these professionals, advisors, and insurance companies in Exhibit "A" to the Karcher Affidavit. The Debtors do not believe such representations will affect these proceedings or D&L's ability to represent the Debtors and the interests of the estates in these chapter 11 cases.

40.     The Debtors do not believe a dispute will arise with regard to any entity listed on Exhibit "A" to the Karcher Affidavit, but as set forth above, to the extent actual conflicts arise, TSS will represent the Debtors where actual conflicts preclude D&L's representation of the interests of the estates.

41.     In addition, a general inquiry to all D&L attorneys was sent by electronic mail to determine if any D&L attorney, or anyone in his or her immediate family (spouse, minor children, or family members living in his or her household) (i) owns any debt or equity security of any of the Debtors, to the extent applicable; (ii) holds an administrative expense claim against any of the Debtors; (iii) holds a general unsecured claim against any of the Debtors; and/or (iv) was an officer, director, or employee of any of the Debtors. As of the date hereof, D&L has not received any affirmative response to this inquiry.

42.     D&L will periodically review its files during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, D&L will use its reasonable efforts to identify any such further developments and will promptly file a supplemental affidavit as required by Bankruptcy Rule 2014(a).

43.     To the best of the Debtors' knowledge, information and belief, and based upon the database search described above, D&L neither represents nor holds any interest adverse to the interests of the estates or any class of creditors or equity security holders by reason of any

relationship or connections with or interest in the Debtors or any Interested Parties and is "disinterested" as such term is defined in Bankruptcy Code section 101(14).

## NOTICE AND PROCEDURES

44.     No trustee or examiner has been appointed in the Debtors' chapter 11 cases. Notice of this Application has been given to (i) the U.S. Trustee, (ii) the Committee, (iii) WG&M, and (iv) all other parties who have filed a notice of appearance in the Debtors' chapter 11 cases. The Debtors submit that, under the circumstances, no other or further notice need be given.

45.     Because this Application presents no novel issues of law and the authorities relied upon are stated herein, the Debtors respectfully request that this Court waive the requirement contained in Local Bankruptcy Rule 9013-1(b) that the Debtors file a separate memorandum of law in support of this Application.

46.     No previous Application for the relief sought herein has been made to this or any other court.

**WHEREFORE** the Debtors respectfully request that this Court enter an order, substantially in the form annexed hereto as Exhibit "B," approving the substitution of D&L as attorneys for the Debtors and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 4, 2008

DEWEY & LEBOEUF LLP

By: /s/ Timothy Q. Karcher
Martin J. Bienenstock (MB 3001)
Timothy Q. Karcher (TK 6173)
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 424-8000
Facsimile: (212) 424-8500

***Attorneys for the Debtors and Debtors-In-Possession***

Ames Department Stores, Inc., *et al.*

By: /s/ Rolando de Aguiar

Rolando de Aguiar
Chief Wind-Down Officer

- 17 -

# EXHIBIT A

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 424-8000
Facsimile: (212) 424-8500
Martin J. Bienenstock (MB 3001)
Timothy Q. Karcher (TK 6173)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**In re**                                             :
                                                      :      **Chapter 11 Case No.**
**AMES DEPARTMENT STORES, INC.,** *et al.,*    :      **01-42217 (REG)**
                                                      :
                      **Debtors.**                    :      **Jointly Administered**
                                                      :
-----------------------------------------------------------x

## AFFIDAVIT OF TIMOTHY Q. KARCHER IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE, RULE 2014(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND RULES 2014-1, 2016-1, AND 2090-1(e) OF THE LOCAL BANKRUPTCY RULES SUBSTITUTING DEWEY & LEBOEUF LLP AS ATTORNEYS FOR THE DEBTORS NUNC PRO TUNC TO DECEMBER 7, 2007

Timothy Q. Karcher hereby declares under penalty of perjury that the following is true and correct:

1.      I am a partner of the firm of Dewey & LeBoeuf LLP ("D&L" or the "Firm"), a law firm with its principal office at 1301 Avenue of the Americas, New York, New York 10019. The Firm is an international law firm with more than 1,400 lawyers in 12 countries including the United Kingdom, Belgium, France, Germany, Italy, Poland, China, South Africa, Kazakhstan, Russia and Saudi Arabia. Within the United States, the Firm has offices in Albany, New York; Austin, Texas; Boston, Massachusetts; Charlotte, North Carolina; Chicago, Illinois; East Palo Alto, Los Angeles and San Francisco, California; Hartford, Connecticut; and

Jacksonville, Florida. The Firm is the product of a recent merger between Dewey Ballantine LLP and LeBoeuf, Lamb, Greene & MacRae LLP, which became effective October 1, 2007.

2.     I submit this affidavit in connection with the application, dated February 4, 2008 (the "Application"),[1] of Ames Department Stores, Inc. and its subsidiaries, as debtors and debtors in possession (collectively, "Ames" or the "Debtors") for entry of an order authorizing the retention and employment of D&L as their general bankruptcy attorneys in the above-captioned chapter 11 cases and substituting D&L for Weil, Gotshal & Manges LLP ("WG&M"), in accordance with the terms and conditions set forth in the Application and in compliance with sections 327(a), 328(a), 329, 330, and 504 of title 11, United States Code (the "Bankruptcy Code"), and to provide the disclosure required under Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Unless otherwise stated in this affidavit, I have personal knowledge of the facts set forth herein. To the extent any information disclosed herein requires amendment or modification upon D&L's completion of further analysis or as additional creditor information becomes available to it, a supplemental affidavit will be submitted to the Court reflecting such amended or modified information.

3.     Prior to joining D&L, I, along with my colleague Martin J. Bienenstock, served as attorneys for the Debtors with WG&M. I was a senior associate with WG&M. Mr. Bienenstock was a partner with WG&M and the co-chair of WG&M's Business Finance and Restructuring department. Effective December 7, 2007, Mr. Bienenstock became a retired partner of WG&M and I resigned and withdrew from WG&M and we were admitted to D&L as partners in D&L's Business Solutions & Governance ("BSG") department. Mr. Bienenstock currently serves as Chairman of the BSG department.

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

4.     The BSG department is a multidisciplinary practice group with 55 members throughout D&L.  Twenty-four members of the BSG department are resident in the firm's New York office.  The members of the BSG department, as well as a number of other D&L attorneys throughout the firm, have substantial experience and expertise in chapter 11 cases involving business entities, as well as vast expertise in the practice areas of corporate law, finance, litigation, and other fields that may be required by the Debtors in these cases.  Attorneys from D&L have represented debtors, creditors, purchasers, and other parties-in-interest before courts in the Southern District of New York, the Second Circuit, and in numerous other jurisdictions throughout the country.

5.     Mr. Bienenstock and I held significant roles in the Debtors' chapter 11 cases while we were with WG&M and are extremely familiar with the Debtors' businesses, financial affairs, and the circumstances surrounding the Debtors' chapter 11 filings, as well as the Initiatives outlined in the Application.

## D&L IS DISINTERESTED

6.     Except as set forth herein, to the best of my knowledge, after due inquiry, neither I, D&L, nor any partner of, associate of, or of counsel to the Firm represents any party in interest (or their attorneys or accountants) other than the Debtors and their affiliates in connection with the Debtors' chapter 11 cases.

7.     To the best of my knowledge, D&L is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that D&L, its partners, of counsel, and associates:

(a)     are not creditors, equity security holders, or insiders of the Debtors;

(b)     are not and were not investment bankers for any outstanding security of the Debtors;

3

(c)    have not been, within three years before the date of filing of the Debtors' chapter 11 petitions, (i) investment bankers for a security of the Debtors, or (ii) an attorney for such an investment banker in connection with the offer, sale or issuance of a security of the Debtors;

(d)    are not and were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors or an investment banker as specified in subparagraph (b) or (c) of this paragraph; and

(e)    except as otherwise disclosed herein, have not represented any party in connection with matters relating to the Debtors, although D&L has certain relationships with other parties in interest and other professionals in connection with unrelated matters.

8.    I am not related, and to the best of my knowledge, no attorney at the Firm is related, to any United States Bankruptcy Judge in this District or to the United States Trustee for Region 2, or any employee thereof.

9.    Upon information and belief, none of the representations described herein are materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders thereof.

10.    D&L is not a creditor of the Debtors and has not asked for an advance payment or security retainer in these cases.

## D&L'S CONNECTIONS WITH PARTIES IN INTEREST IN MATTERS UNRELATED TO THESE CHAPTER 11 CASES

11.    D&L has a large and diversified legal practice that encompasses the representation of many financial institutions and commercial corporations and their affiliates, some of which are, or may consider themselves to be, creditors or parties in interest of the Debtors' pending chapter 11 cases, or otherwise to have interests in these cases. D&L and certain of its partners, counsel, and associates may have in the past represented, may currently represent, and may in the future represent parties in interest of the Debtors (the "Interested Parties") and their affiliates in connection with matters unrelated to the Debtors and these chapter

4

11 cases. In addition, D&L and certain of its partners, counsel, and associates may have in the past represented, may currently represent, and may in the future represent entities related to Interested Parties and their affiliates in connection with matters unrelated to the Debtors and these chapter 11 cases.

12.     D&L has undertaken a detailed database and electronic search of the legacy Dewey Ballantine LLP and legacy LeBoeuf, Lamb, Greene & MacRae LLP conflicts systems for any connection D&L may have to Interested Parties. The following is a list of the categories of entities that D&L has searched:

(a)     the Debtors;

(b)     entities holding administrative expense claims against the Debtors' estates;

(c)     landlords of the Debtors with unsecured claims;

(d)     holders of greater than 5% of the total outstanding amount of the Debtors' notes as of the commencement of the Debtors' chapter 11 cases;

(e)     significant other general unsecured creditors of the Debtors who have asserted claims, or whose claims have been scheduled, in an amount equal to or greater than $500,000;

(f)     insurers of the Debtors;

(g)     professionals retained by the Debtors;

(h)     directors and officers of the Debtors; and

(i)     employees of the Debtors.

13.     Based upon a review of D&L's conflict search, conducted by attorneys under my supervision, annexed hereto as Exhibit "A" is a list of Interested Parties that D&L

currently represents or has represented subsequent to December 31, 1999, in matters unrelated to the Debtors' chapter 11 cases.[2]

14.     D&L regularly participates in a wide-range of bankruptcy-related, corporate, and litigation matters in which other professionals retained by the estates are involved as clients of the firm or as advisors to entities with interests in matters unrelated to the Debtors in which D&L may act as attorneys. In addition, D&L represents several insurance companies of the Debtors regarding a broad array of issues, including, among others, corporate governance, regulatory, compliance, insolvency, finance, securities, and litigation. D&L has identified these professionals, advisors, and insurance companies as Interested Parties in Exhibit "A" annexed hereto. The Debtors do not believe such representations will affect these proceedings or D&L's ability to represent the Debtors and the interests of the estates in these chapter 11 cases.

15.     The Debtors have commenced an action against certain insurance companies, including the St. Paul Travelers Companies, Inc. ("Travelers") seeking, among other things, (i) a declaratory judgment fixing the amount of collateral necessary to secure the Debtors' insurance obligations and (ii) turnover of excess collateral for the benefit of the Debtors' estates and creditors (the "Travelers Litigation"). Although Travelers is a client of D&L, D&L does not represent Travelers in connection with any matters relating to the Debtors. In accordance with the Firm's policy, an appropriate screen will be established between the attorneys in the Firm that represent Travelers on matters unrelated to the Debtors and the attorneys that will be representing the Debtors in these chapter 11 cases.

---

[2] To the best of my knowledge and information, the annual fees paid to D&L by the clients listed in Exhibit "A" annexed hereto during the past fiscal year did not exceed one percent (1%) of D&L's annual gross revenue for such year.

16.     The Debtors do not believe a dispute will arise with regard to any entity listed on Exhibit "A" annexed hereto. Togut, Segal & Segal, LLP ("TSS"), which has already been retained as co-attorneys for the Debtors, will represent the Debtors where actual conflicts preclude D&L's representation of the Debtors.

17.     In addition, a general inquiry to all D&L attorneys was sent by electronic mail to determine if any D&L attorney, or anyone in his or her immediate family (spouse, minor children, or family members living in his or her household), (i) owns any debt or equity security of any of the Debtors, to the extent applicable; (ii) holds an administrative expense claim against any of the Debtors; (iii) holds a general unsecured claim against any of the Debtors; and/or (iv) was ever an officer, director, or employee of any of the Debtors. As of the date hereof, no attorney has responded to this general inquiry in the affirmative.

18.     D&L will periodically review its files during the pendency of these chapter 11 cases to ensure that no conflicts or other circumstances exist or arise, which require supplemental disclosure. If any new relevant facts or relationships are discovered or arise, D&L will use its reasonable efforts to identify any such further developments and will promptly file a supplemental affidavit as required by Bankruptcy Rule 2014(a).

19.     Based on the foregoing, insofar as I have been able to ascertain after diligent inquiry, and except as provided otherwise herein, I believe D&L does not hold or represent an interest adverse to the Debtors' estates, and D&L is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

## SERVICES TO BE RENDERED BY D&L

20.     The professional services D&L may render to the Debtors as their general

bankruptcy counsel, as the Debtors may request from time to time, include, without limitation:

(a)     advising the Debtors with respect to their powers and duties as debtors-in-possession in the continued operation of their businesses;

(b)     advising the Debtors with respect to all general bankruptcy matters;

(c)     preparing on behalf of the Debtors all necessary applications, answers, orders, reports, and papers in connection with the administration of their estates;

(d)     representing the Debtors at all critical hearings on matters relating to their affairs and interests as debtors-in-possession before this Court, any federal or state courts or administrative panels, any appellate courts, the United States Supreme Court, and protecting the interests of the Debtors;

(e)     prosecuting and defending litigated matters that may arise during these cases, including such matters as may be necessary for the protection of the Debtors' rights, the preservation of estate assets, or the resolution of the Debtors' chapter 11 cases;

(f)     prosecuting and implementing the Debtors' chapter 11 plan;

(g)     negotiating appropriate transactions and preparing any necessary documentation related thereto;

(h)     advising, assisting and negotiating the sale of all or part of the Debtors' remaining assets pursuant to 11 U.S.C. §363 or the Debtors' chapter 11 plan;

(i)     representing the Debtors on matters relating to the assumption or rejection of any remaining executory contracts and unexpired leases;

(j)     advising the Debtors with respect to corporate, securities, real estate, litigation, labor, finance, insurance, regulatory, tax, healthcare, and other legal matters which may arise during the pendency of these cases; and

(k)     performing all other legal services that are necessary for the efficient and economic administration of these cases.

21.     Subject to the Court's approval of this Application, D&L has indicated a

willingness to serve as the Debtors' counsel and to perform the services described above.

## D&L'S RATES AND BILLING PRACTICES

22.     Subject to this Court's approval, compensation will be payable to D&L on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by the Firm.  As is the case with respect to rates charged in non-bankruptcy matters of this type, D&L's rates are subject to periodic adjustments to reflect economic and other conditions. Currently, hourly rates of partners and counsel for D&L likely to work on this matter range from $625 to $950.  D&L's hourly rates for U.S. associates range from $325 per hour to $575 per hour.  Current hourly rates for paralegals of D&L likely to work on this matter range from $175 to $230.

23.     Consistent with the Firm's policy with respect to its other clients, D&L's disbursement policies pass through all out-of-pocket expenses at actual cost, or at estimated actual cost when the actual cost is difficult to determine.  These expenses include facsimiles, toll calls, overtime meals, computerized research, deliveries, court costs, transcript fees, travel, clerk fees, certain secretarial and other overtime expenses, and other expenses.

24.     D&L intends to apply to the Court for allowance of compensation for professional services and reimbursement of expenses incurred in these cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the standing orders and Local Bankruptcy Rules of this Court, including the Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases (M-151) and the Standing Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals (M-219).

25.     D&L has agreed to accept as compensation such sums as may be allowed by the Court on the basis of (a) the professional time spent, (b) the rates charged for such services, (c) the necessity of such services to the administration of the estates, (d) the

reasonableness of the time within which the services were performed in relation to the results achieved, and (e) the complexity, importance, and nature of the problems, issues, or tasks addressed in these cases.

26.     No promises have been received by D&L or any member, counsel, or associate thereof as to payment or compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. D&L has no agreement with any other entity to share with such entity any compensation received by D&L or by any such entity.

27.     D&L has not received a retainer in connection with services rendered and expenses incurred on behalf of the Debtors.

28.     D&L understands that the Debtors have also retained other professionals in connection with their chapter 11 cases, including TSS. D&L intends to coordinate with the Debtors' other professionals, and clearly delineate their respective duties, so as to prevent duplication of effort, whenever possible.

29.     The foregoing constitutes the statement of D&L pursuant to sections 327(a), 328(a), 329, 330, and 504 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b).

30.   I certify that the foregoing statements are true and correct to the best of my

knowledge, information, and belief.

TIMOTHY Q. KARCHER
A Member of the Firm

Sworn to and Subscribed
Before me this 4th day of
February, 2008

Notary Public

ANN L. DiROCCO
NOTARY PUBLIC, State of New York
No. 01DI4664693
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires February 28, 2011

NYC 653948.10 99980 10010

11

# EXHIBIT A

**Vendors of the Debtors with Administrative Expense Claims Represented by D&L in Matters Unrelated to the Debtors' Chapter 11 Cases**

Automatic Data Processing
Alltel Corporation
American Stock Transfer & Trust Company
Ameritech Corporation
Bell South Corporation
Brother International Corporation
Clorox Company
Danone Waters of North America
Fleet Capital Leasing
Fruit of the Loom
General Electric Capital Corporation
Homemaker Industries, Inc.
Jersey Central Power & Light Company
Labor Ready, Inc.
L&N Sales and Marketing, Inc.
Liquidity Solutions Inc.
MCI, Inc.
MCI WorldCom Communications, Inc.
Mobil Oil Corporation
Nashua Corporation
Pinnacle Group, LLC
Pitney Bowes Credit Corp.
Polaroid Corporation
Random House, Inc.
Recoton Corp.
Sprint
Symbol Technologies, Inc.
Town of Manchester
Town of West Hartford
United Parcel Service
Warner Home Video
WBZZ
WDOK FM
WPGC
WPXY
WRCH FM
WZMX FM

**Unsecured Creditors Represented by D&L in Matters Unrelated to the Debtors' Chapter 11 Cases**

Bondholders of the Debtors

Bank of New York
PNC Bank
Chase Bank of Texas
State Street Bank & Trust Company

Landlords of the Debtors

Brewster Co.
GMAC Commercial Mortgage Corporation
Sun Life Assurance Co.
The Widewaters Group, Inc.

Other General Unsecured Creditors

ABN-AMRO Securities, LLC
Banc of America Securities, LLC
Bank of America N.A.
Bankers Trust Co.
Bear Stearns Securities Corp.
Bissell, Inc.
Chase Manhattan Bank
Clorox Company
Conair Corporation
Eastman Kodak Company
Fruit of the Loom
Goldman, Sachs & Co.
Hasbro, Inc.
Hewlett-Packard Company
International Business Machines Corp.
JP Morgan Chase Bank
LaSalle National Bank N.A.
Legg Mason Wood Walker, Inc.
Merrill Lynch, Pierce, Fenner & Smith Inc.
Metro-Goldwyn-Mayer, Inc.
Morgan Stanley DW Inc.
NCM Americas, Inc.
Orix USA Corporation
Rosenthal & Rosenthal, Inc.
Salomon Smith Barney, Inc.

Samsung Electronics America
Schering-Plough Healthcare
Shipman & Goodwin
Sterling National Bank
Transport International Pool, Inc.
UBS PaineWebber, Inc.
Unical Enterprises, Inc.
Wells Fargo Bank Minnesota, N.A.
Xerox Corp.

**<u>Professionals and Advisors of the Debtors
Represented by D&L in Matters
Unrelated to the Debtors' Chapter 11
Cases</u>**

Jefferies & Company

**<u>Insurance Companies of the Debtors
Represented by D&L in Matters
Unrelated to the Debtors' Chapter 11
Cases</u>**

Connecticare, Inc.
Hartford Life Insurance Company
Metropolitan Life Insurance Company
The St. Paul Travelers Companies, Inc.

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                         :
                                              :        **Chapter 11 Case No.**
**AMES DEPARTMENT STORES, INC.,** *et al.*,   :        **01-42217 (REG)**
                                              :
                    **Debtors.**              :        **Jointly Administered**
                                              :
------------------------------------------------------------x

## ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE , RULE 2014(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND RULES 2014-1, 2016-1, AND 2090-1(e) OF THE LOCAL BANKRUPTCY RULES SUBSTITUTING DEWEY & LEBOEUF LLP AS ATTORNEYS FOR THE DEBTORS NUNC PRO TUNC TO DECEMBER 7, 2007

Upon consideration of the application, dated February 4, 2008 (the

"Application"),[1] of Ames Department Stores, Inc. and its subsidiaries, as debtors and

debtors in possession (collectively, "Ames" or the "Debtors"), for entry of an order

pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the

"Bankruptcy Code"); Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rules 2014-1, 2016-1, and 2090-1(e) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York (the

"Local Bankruptcy Rules") authorizing the employment of Dewey & LeBoeuf LLP

("D&L") as the Debtors' general bankruptcy attorneys and substituting D&L for Weil,

Gotshal & Manges LLP ("WG&M"), as more fully set forth in the Application; and upon

the Affidavit of Timothy Q. Karcher, sworn to February 4, 2008 (the "Karcher

Affidavit"), annexed to the Application as Exhibit "A"; and the Court being satisfied,

based on the representations made in the Application and the Karcher Affidavit, that

D&L represents or holds no interest adverse to the Debtors or their estates and is

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Application.

disinterested under section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Application having been provided; and it appearing that no other or further notice of the Application need be provided; and the Court having determined the relief sought in the Application is necessary and in the best interests of the Debtors, their estates, and all parties in interest; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is granted; and it is further

ORDERED that, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors, as debtors in possession, are authorized to employ and retain D&L as their attorneys for the purposes described in the Application, in accordance with D&L's normal hourly rates and disbursement policies as set forth in the Karcher Affidavit, *nunc pro tunc* to December 7, 2007; and it is further

ORDERED that, in accordance with the requirements of Local Bankruptcy Rule 2090-1(e), sufficient cause exists to replace WG&M with D&L; and it is further

ORDERED that D&L shall apply for compensation and reimbursement in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, local rules and orders of the Court, guidelines established by the Office of the United States Trustee, and such other procedures as may be fixed by order of this Court, including the Court's Order of August 23, 2001 establishing compensation procedures in these chapter 11 cases and shall be paid in accordance with the foregoing; and it is further

2

ORDERED that, notwithstanding this Court's Orders of August 20, 2001 and October 4, 2001 authorizing employment of WG&M as counsel to the Debtors under sections 327(a) and 328(a) of the Bankruptcy Code, from and after the date of this Order, WG&M shall no longer be retained as general bankruptcy counsel under section 327(a) and 328(a) of the Bankruptcy Code; and it is further

ORDERED that, notwithstanding that effective from and after the date of entry of this Order WG&M shall no longer be retained as general bankruptcy counsel, in respect of all professional services rendered and expenses incurred by WG&M (a) prior to the entry of this Order as the Debtors' general bankruptcy counsel or (b) in connection with the wind-down and transfer of files and information to D&L, WG&M may continue to apply for, and hereby is authorized to apply for, compensation and reimbursement in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, local rules and orders of the Court, guidelines established by the Office of the United States Trustee, and such other procedures as may be fixed by order of this Court and shall be paid in accordance with the foregoing; and it is further

ORDERED that, for services rendered and expenses incurred by WG&M, if any, at the express request of the Debtors or their representatives from and after the date of entry of this Order, WG&M shall be retained as special counsel to the Debtors engaged under section 327(e) of the Bankruptcy Code, but for the limited purposes of winding down and transferring files and information to D&L, and WG&M may apply for, and hereby is authorized to apply for, compensation and reimbursement in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, local rules and orders of the Court, guidelines established

by the Office of the United States Trustee, and such other procedures as may be fixed by order of this Court; and it is further

ORDERED that this Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to the implementation of this Order; and it is further

ORDERED that service of the Application as provided therein shall be deemed good and sufficient notice of such Application; and it is further

ORDERED that the requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York for the filing of a memorandum of law is waived.

Dated:    New York, New York
          February __, 2008

_____
UNITED STATES BANKRUPTCY JUDGE