**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
```
In re                           :      **Chapter 11**

                                  :

**AMES DEPARTMENT STORES, INC.,** *et al.,*  **:**     **Case No. 01-42217 (REG)**

                                  :

                    **Debtors.**     :      **(Jointly Administered)**

```
-------------------------------------------------------------x
```

**DEBTORS'** ~~**MODIFIED SECOND**~~
**THIRD AMENDED <u>CHAPTER 11 PLAN</u>**

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10019
Tel: (212) 969-3000
Fax: (212) 969-2900

- and -

STORCH AMINI & MUNVES PC
2 Grand Central Tower
New York, New York 10017
Tel: (212) 490-4100
Fax: (212) 490-4208

*Attorneys for the Debtors and Debtors in*
*Possession*

Dated: ~~September 10,~~<u>October 29,</u> 2013
      New York, New York

# Table of Contents

**Page**

Article I.  Definitions and Rules of Construction ...................................................................... 1
    1.1.    Definitions ................................................................................................... 1
    1.2.    Rules of Construction ................................................................................ 6

Article II.  Administrative, Priority Tax, and Indenture Trustee Fee Claims .............................. 6
    2.1.    Administrative Claims ............................................................................... 6
    2.2.    Priority Tax Claims .................................................................................... 7
    2.3.    Final Fee Applications ............................................................................... 7
    2.4.    Professional Fee Escrow ............................................................................ 7
    2.5.    Professional Fee Reserve Amount ............................................................. 7
    2.6.    Indenture Trustee Fees .............................................................................. 7

Article III.  Classification and Treatment of Claims and Equity Interests.................................. 7
    3.1.    Classification of Claims and Equity Interests ........................................... 7
    3.2.    Treatment of Claims and Equity Interests. ............................................... 8
        (a)    Class 1 – Priority Non-Tax Claims ............................................. 8
        (b)    Class 2 – Note Claims ................................................................. 8
        (c)    Class 3 – General Unsecured Claims ........................................... 8
        (d)    Class 4 – Section 510(b) Claims ................................................. 8
        (e)    Class 5 – Intercompany Claims ................................................... 9
        (f)    Class 6 – Equity Interests ............................................................ 9
    3.3.    Elimination of Vacant Classes ................................................................... 9

Article IV.  Means for Implementation...................................................................................... 9
    4.1.    Substantive Consolidation ......................................................................... 9
    4.2.    Liquidation of the Debtors ......................................................................... 9
    4.3.    Plan Administrator ................................................................................... 10
    4.4.    Plan Committee ........................................................................................ 10
    4.5.    No Liability .............................................................................................. 11
    4.6.    Indemnification ........................................................................................ 11
    4.7.    State Street Escrow ................................................................................... 11
    4.8.    Leesport Property Escrow ......................................................................... 12
    4.9.    PIP and ERP Obligations ......................................................................... 12
    4.10.    Corporate Action...................................................................................... 12
    4.11.    Continued Corporate Existence; Dissolution of the Debtors .................... 12
    4.12.    Cancellation of Securities ......................................................................... 12
    4.13.    Preservation of Causes of Action ............................................................. 13

Article V.  Executory Contracts and Unexpired Leases ........................................................... 13
    5.1.    Assumed and Rejected Executory Contracts and Unexpired Leases.................... 13
    5.2.    Rejection Damages Bar Date ................................................................... 13

Article VI.  Distribution Provisions ......................................................................................... 13

|  | 6.1. | Administrative and Disputed Claims Reserves | 13 |
|---|------|--------------------------------------------|----|
|  | 6.2. | Record Date for Distributions | 14 |
|  | 6.3. | Delivery of Distributions | 14 |
|  | 6.4. | Manner of Distributions | 14 |
|  | 6.5. | Minimum Distributions | 15 |
|  | 6.6. | Undeliverable Distributions | 15 |
|  | 6.7. | Failure to Present Checks | 15 |

| Article VII. | Claim Administration Provisions | 15 |
|--------------|----------------------------------|----|
| 7.1. | Reservation of Rights to Object to Claims | 15 |
| 7.2. | Claim Objection Deadline | 15 |
| 7.3. | Filing of Objections | 16 |
| 7.4. | Amendments to Claims | 16 |
| 7.5. | Setoff and Recoupment | 16 |
| 7.6. | No Interest | 16 |
| 7.7. | Disallowance of Claims Payable by Third Parties | 16 |
| 7.9. | Disallowance of Duplicative Note Claims | 16 |
| 7.10. | Withholding and Reporting | 16 |

| Article VIII. | Effects of Plan Confirmation | 17 |
|---------------|------------------------------|----|
| 8.1. | Injunction | 17 |
| 8.2. | Exculpation | 17 |
| 8.3. | Release of Directors and Officers | 17 |
| 8.4. | Terms of Stays and Injunctions | 17 |

| Article IX. | Conditions to the Effective Date | 18 |
|-------------|----------------------------------|----|
| 9.1. | Conditions to the Effective Date | 18 |
| 9.2. | Effect of Non-Occurrence of Conditions | 18 |

| Article X. | Administrative Provisions | 18 |
|------------|---------------------------|----|
| 10.1. | Retention of Jurisdiction | 18 |
| 10.2. | Statutory Fees | 20 |
| 10.3. | Tax Exemption | 20 |
| 10.4. | Binding Effect of Plan | 20 |
| 10.5. | Termination of the Creditors' Committee | 20 |
| 10.6. | Governing Law | 20 |
| 10.7. | Computation of Time | 20 |
| 10.8. | Entire Agreement | 20 |
| 10.9. | Severability | 20 |
| 10.10. | Notices | 21 |

# Article I

## Definitions and Rules of Construction

1.1.    <u>Definitions</u>.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in this Article I.  Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code, shall have the meaning ascribed to such term in the Bankruptcy Code.

"<u>10% Notes</u>" means the 10% senior notes due 2006 issued pursuant to the 1999 Indenture.

"<u>12.5% Notes</u>" means the 12.5% senior notes due 2003 issued pursuant to the 1996 Indenture.

"<u>1996 Indenture</u>" means the Indenture, dated as of April 19, 1996, between Hills Stores Company, as borrower, Hills Department Store Company, C.R.H. International, Inc., Canton Advertising, Inc., Corporate Vision, Inc., HDS Transport, Inc., and Hills Distributing Company, as guarantors, and Fleet National Bank, as trustee, as amended, modified, or supplemented, and together with all guarantees and other ancillary documents, if any, pursuant to which Hills Stores Company issued $195 million in principal amount of 12.5% Notes.

"<u>1999 Indenture</u>" means the Indenture, dated as of April 27, 1999, between Ames Department Stores, Inc., as borrower, Ames Realty II, Inc., Ames FS, Inc., Ames Transportation Systems, Inc., AMD, Inc., and Ames Merchandising Corporation, as guarantors, and The Chase Manhattan Bank, as indenture trustee, as amended, modified, or supplemented, and together with all guarantees and other ancillary documents, if any, pursuant to which Ames Department Stores, Inc. issued $200 million in principal amount of 10% Notes.

"<u>Administrative Charge</u>" means the one time $50 charge that Distributions in respect of Allowed Class 3 Claims shall be subject to for administration costs, postage, and handling pursuant to Section 3.2(c).

"<u>Administrative Claim</u>" means a Claim for costs and expenses of administration under sections 503(b) and 1114(e)(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtors' estates and operating their business, (b) Professional Fee Claims, and (c) Claims for outstanding obligations owing pursuant to the PIP and ERP Order.

"<u>Administrative Reserve</u>" means the reserve established for the payment of the estimated fees and expenses associated with administering the Chapter 11 Cases on and after the Effective Date, including prosecuting the Lumbermens Action to a conclusion, objecting to and otherwise resolving Claims, and liquidating and administering the Debtors' estates.

"<u>Allowed</u>" means, with respect to a Claim, (a) any Claim, proof of which has been timely filed before the applicable bar date; (b) any Claim that is listed in the Schedules as liquidated in amount and not disputed or contingent and with respect to which no contrary proof of claim has been filed; and (c) any Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided*, *however*, that with respect to any Claim described in clauses (a) and (b) above,

such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been interposed within the applicable period fixed by the Plan or by order of the Bankruptcy Court.

"Assets" means, with respect to the Debtors, all right, title, and interest in and to property owned by the Debtors or subsequently acquired by the Debtors, including any property of the estate under section 541 of the Bankruptcy Code and any Causes of Action.

"Available Cash" means (a) the Debtors' Cash and Cash proceeds of the Debtors' other Assets remaining after the establishment of the Administrative Reserve, Disputed Claims Reserve, and Professional Fee Escrow Account; and (b) any excess Cash in the Administrative Reserve, Disputed Claims Reserve, and Professional Fee Escrow Account, as described in Sections 2.4 and 6.1 of the Plan.

"Avoidance Actions" means any and all avoidance, recovery, subordination, or other actions or remedies that may be brought on behalf of the Debtors or their estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and/or 553 of the Bankruptcy Code.

"Bankruptcy Code" means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York and any other court that exercises jurisdiction over the Chapter 11 Cases or proceedings therein.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein.

"Cash" means legal tender of the United States of America and equivalents thereof.

"Cause of Action" means any Claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any Claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

"Chapter 11 Cases" means the above-captioned chapter 11 cases of the Debtors pending in the Bankruptcy Court.

"Charging Lien" means any contractual Lien or other payment priority right to which an Indenture Trustee is entitled, pursuant to its Indenture or otherwise, for payment of its Indenture Trustee Fees.

"Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

"Claims Agent" means Donlin Recano & Company, Inc.

"Class" means a category of Claims or Equity Interests as classified under the Plan.

"Confirmation Date" means the date that the Confirmation Order is entered by the Bankruptcy Court.

"Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

"Confirmation Order" means the order of the Bankruptcy Court, entered pursuant to section 1129 of the Bankruptcy Code, confirming the Plan.

"Creditors' Committee" means the official committee of unsecured creditors in the Chapter 11 Cases.

"Debtors" means Ames Department Stores, Inc., Ames Merchandising Corporation, Amesplace.com, Inc., Ames Realty II, Inc., and Ames Transportation Systems, Inc.

"DIP Lenders" means the Debtors' postpetition lenders pursuant to any orders entered by the Bankruptcy Court.

"Disclosure Statement" means the Debtors' disclosure statement with respect to the Plan, as the same may be amended or modified.

"Disclosure Statement Hearing Notice" means the notice mailed by the Debtors to parties in interest in accordance with Bankruptcy Rules 2002(b) and 3017(a) to provide them with notice of the hearing at which the Bankruptcy Court shall consider entry of the Disclosure Statement Order and the deadline for filing and serving objections thereto.

"Disclosure Statement Order" means the order entered by the Bankruptcy Court (a) approving the Disclosure Statement as containing "adequate information," within the meaning of section 1125 of the Bankruptcy Code, (b) establishing solicitation and tabulation procedures, and (c) scheduling a Confirmation Hearing.

"Disputed" means, with respect to a Claim, a Claim that has not yet been Allowed.

"Disputed Claims Reserve" means a Cash reserve that shall be maintained by the Plan Administrator in an amount sufficient to pay all Disputed Claims, if such Disputed Claims become Allowed Claims.

"Distribution Record Date" means the date that the Confirmation Order is entered by the Bankruptcy Court.

"Distributions" means distributions of Cash to be made in accordance with the Plan.

"Effective Date" means the first business day determined by the Debtors on which all conditions to consummation of the Plan set forth in Section 9.1 have been satisfied.

"Equity Interests" means the interest of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common or preferred stock or other equity securities of the Debtors.

"Exculpated Parties" means the Debtors, the Creditors' Committee, the Plan Administrator, the Plan Committee, the Indenture Trustees, and the DIP Lenders, including their former, current, and future members, directors, officers, employees, attorneys, financial advisors, investment bankers, accountants, representatives, and other agents, each in their respective capacities as such.

"Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (a) which has not been reversed, stayed, modified, or amended and (b) as to which the time to appeal or move for reargument or rehearing has expired and either (i) no appeal or motion for reargument or rehearing has been timely taken or (ii) any appeal that has been taken or motion for reargument or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule may be filed relating to such order or judgment shall not prevent such order from being a Final Order.

"General Unsecured Claims" means any Claim that is not an Administrative Claim, Priority Tax Claim, Professional Fee Claim, Priority Non-Tax Claim, Note Claim, Section 510(b) Claim, or Intercompany Claim.

"Indenture Trustee Fees" means the reasonable and documented compensation, fees, expenses, disbursements, and indemnity claims of the Indenture Trustees incurred pursuant to their respective Indentures, including, without limitation, the reasonable and documented fees, expenses, and disbursements of the Indenture Trustees' attorneys, advisors, and agents, whether incurred prior to or after the Petition Date and whether incurred prior to or after consummation of the Plan.

"Indenture Trustees" means the indenture trustees under the Indentures.

"Indentures" means the 1996 Indenture and the 1999 Indenture.

"Intercompany Claim" means all Claims, as of the Petition Date, by a Debtor or an affiliate of a Debtor against another Debtor, resulting from intercompany transactions recorded on the Debtors' books and records.

"Lien" has the meaning set forth in section 101 of the Bankruptcy Code.

"Leesport Sale Order" means the Bankruptcy Court's order, entered December 7, 2004 [Docket No. 2722], approving the sale of the Debtors' commercial real property located in Leesport, Pennsylvania, free and clear of Liens, to Ashley Furniture Industries, Inc.

"Lumbermens Action" means the adversary proceeding *Ames Department Stores, Inc. v. Lumbermens Mutual Casualty Company d/b/a Kemper Insurance Companies and American Motorists Insurance Company*, Adversary Proceeding No. 06-01890, currently pending before the Bankruptcy Court, and any related proceedings to which any of the Debtors is a party.

"Lumbermens Liquidation" means the liquidation proceeding pending before the Circuit Court of Cook County, Illinois, Case No. 12-ch-24227, with respect to Lumbermens Mutual Casualty Co. d/b/a Kemper Insurance Companies.

"Note Claim" means a Claim arising under the Notes.

"Notes" means the 10% Notes and the 12.5% Notes.

"Petition Date" means August 20, 2001.

"PIP and ERP Order" means the Bankruptcy Court's order, entered November 13, 2003 [Docket No. 2426], authorizing the Debtors to implement a Performance Incentive Program and Expected Recovery Percentage Program.

"Plan" means this chapter 11 plan, including all exhibits, schedules, and supplements hereto, either in its current form or as the same may be amended or modified.

"Plan Administrator" means Rolando de Aguiar, acting in accordance with the Retention Agreement and the Plan.

"Plan Committee" means the post-Effective Date committee appointed pursuant to Section 4.4.

"Priority Non-Tax Claim" means a Claim entitled to priority in right of payment pursuant to section 507(a) of the Bankruptcy Code, other than Administrative Claims, Professional Fee Claims, and Priority Tax Claims.

"Priority Tax Claim" means a Claim entitled to priority in right to payment pursuant to section 507(a)(8) of the Bankruptcy Code.

"Pro Rata" means, with respect to any Distribution to holders of Allowed General Unsecured Claims and Allowed Note Claims, the proportion that the amount of a Claim in such Classes bears to the aggregate amount of all Claims in such Classes (including Disputed Claims, but excluding Claims which have been disallowed or expunged).

"Professional Fee Claim" means a Claim for compensation for services rendered and reimbursement of expenses incurred by Professionals in the Chapter 11 Cases made pursuant to an application filed with the Bankruptcy Court. For the avoidance of doubt, "Professional Fee Claim" does not include any Claim for the payment of Indenture Trustee Fees.

"Professional Fee Escrow Account" means an account to be funded by the Debtors on or prior to the Effective Date, pursuant to Section 2.4 of the Plan, in an amount equal to the Professional Fee Reserve Amount.

"<u>Professional Fee Reserve Amount</u>" means the aggregate amount of unpaid Professional Fee Claims through the Effective Date, as estimated in accordance with Section 2.5 of the Plan.

"<u>Professionals</u>" means those persons or entities retained or authorized to be retained in the Chapter 11 Cases by an order of the Bankruptcy Court pursuant to sections 327 or 1102 of the Bankruptcy Code.

"<u>Retention Agreement</u>" means the agreement governing the retention of the Plan Administrator, which agreement is substantially in the form attached hereto as <u>Exhibit A</u>. The Retention Agreement forms an integral part of the Plan and shall be deemed incorporated into the Plan as if set forth in full herein.

"<u>Schedules</u>" means the Debtors' schedules of assets and liabilities and statements of financial affairs.

"<u>Section 510(b) Claims</u>" means any Claim that is subordinated to Note Claims or General Unsecured Claims pursuant to section 510(b) of the Bankruptcy Code.

"<u>Solicitation Package</u>" means documents distributed to holders of Note Claims and General Unsecured Claims in connection with the solicitation of their votes on the Plan pursuant to the Disclosure Statement Order.

"<u>Statutory Fees</u>" means fees arising under 28 U.S.C. § 1930 and, to the extent applicable, accrued interest thereon incurred under 31 U.S.C. § 3717.

1.2.    <u>Rules of Construction</u>.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained therein.  The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan.  The headings used herein are for convenience and reference only and shall not limit or otherwise affect the provisions hereof.  All references in the Plan to an "Article" or "Section" are references to an article or section of the Plan.

## Article II

## Administrative, Priority Tax, and Indenture Trustee Fee Claims

2.1.    <u>Administrative Claims</u>.    Except to the extent that a holder of an Allowed Administrative Claim agrees to less favorable treatment, and to the extent such Claim has not been previously satisfied, on the Effective Date or as soon as practicable thereafter, each holder of an Allowed Administrative Claim shall receive, in full satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Claim.  For the avoidance of doubt, all Disputed Administrative Claims are identified on <u>Schedule 2.1</u>.  Upon the Effective Date, all Disputed Administrative Claims shall be disallowed and expunged; *provided*, *however*, that no Disputed Administrative Claim that has not been resolved prior to the Confirmation Date shall be disallowed or expunged without notice to the holder of such Claim and an appropriate order of the Bankruptcy Court disallowing or expunging such Claim.  Except as provided in Sections 2.4 and 4.9 of the Plan, the Debtors shall not be required to pay any Administrative Claims not identified

on Schedule 2.1 and which have not been Allowed prior to the Effective Date or are the subject of a pending objection.

2.2.    Priority Tax Claims.  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, and to the extent such Claim has not been previously satisfied, on the Effective Date or as soon as practicable thereafter, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Claim.

2.3.    Final Fee Applications.  All final requests for payment of Professional Fee Claims shall be filed no later than thirty (30) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

2.4.    Professional Fee Escrow Account.  On or prior to the Effective Date, the Debtors shall establish the Professional Fee Escrow Account and fund such account with Cash equal to the Professional Fee Reserve Amount.  The Professional Fee Escrow Account shall be maintained in trust for the Professionals.  The Debtors shall pay Allowed Professional Fee Claims in Cash from the Professional Fee Escrow Account as soon as reasonably practicable after such Claims have been Allowed by the Bankruptcy Court.  All amounts remaining in the Professional Fee Escrow Account after all Allowed Professional Fee Claims have been paid in full shall revert to the Debtors, become Available Cash, and be distributed pursuant to the Plan.

2.5.    Professional Fee Reserve Amount.  Professionals shall provide good faith estimates of their unpaid Professional Fee Claims through the Effective Date for the purpose of determining the amount of the Professional Fee Escrow Account and shall deliver such estimates to the Debtors no later than ten (10) days prior to the Confirmation Hearing.  If a Professional does not provide such an estimate, the Debtors may, in their reasonable discretion, estimate the unpaid Professional Fee Claims of such Professional.

2.6.    Indenture Trustee Fees.  On the Effective Date or as soon as practicable thereafter, the Plan Administrator shall pay the Indenture Trustee Fees in Cash, in an amount not to exceed $125,000 per Indenture Trustee, without application to or approval of the Bankruptcy Court and without reduction to Noteholder recoveries.  Notwithstanding the foregoing, each Indenture Trustee shall be entitled to exercise its Charging Lien with respect to any Distributions received in order to satisfy any Indenture Trustee Fees incurred, from time to time, which exceed the $125,000 amount set forth in the preceding sentence (or for any amount which otherwise has not been paid by the Plan Administrator).

### Article III

### Classification and Treatment of Claims and Equity Interests

3.1.    Classification of Claims and Equity Interests.  The following table designates the Classes of Claims against and Equity Interests in the Debtors and identifies which of those Classes are (a) impaired or unimpaired by the Plan, (b) entitled to vote on the Plan, and (c) conclusively

presumed to accept or deemed to reject the Plan pursuant to section 1126(f),(g) of the Bankruptcy Code.

| Class | Description | Impairment | Voting Status |
|-------|-------------|------------|---------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | Conclusively presumed to accept the Plan |
| Class 2 | Note Claims | Impaired | Entitled to vote |
| Class 3 | General Unsecured Claims | Impaired | Entitled to vote |
| Class 4 | Section 510(b) Claims | Impaired | Deemed to reject the Plan |
| Class 5 | Intercompany Claims | Impaired | Deemed to reject the Plan |
| Class 6 | Equity Interests | Impaired | Deemed to reject the Plan |

3.2.     Treatment of Claims and Equity Interests.

(a)     Class 1 – Priority Non-Tax Claims.  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, on the Effective Date or as soon as practicable thereafter, each holder of an Allowed Priority Non-Tax Claim shall receive, in full satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Claim.

(b)     Class 2 – Note Claims.  Except to the extent that a holder of an Allowed Note Claim agrees to less favorable treatment, on the Effective Date or as soon as practicable thereafter, each holder of an Allowed Note Claim shall receive, in full satisfaction of such Claim, its Pro Rata share of Available Cash.  For the avoidance of doubt, the Indenture Trustees' respective Claims under the Indentures for principal and interest outstanding as of the Petition Date shall be Allowed and each Indenture Trustee shall be paid its Indenture Trustee Fees in accordance with the Plan.

(c)     Class 3 – General Unsecured Claims.  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on the Effective Date or as soon as practicable thereafter, each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction of such Claim, its Pro Rata share of Available Cash.  Each Distribution in respect of an Allowed Class 3 Claim shall be subject to a one time $50 Administrative Charge for administration costs, postage, and handling.  No Distribution shall be made on account of any Allowed Class 3 Claim if the Administrative Charge reduces the Distribution on account of such Claim to $0.

(d)     Class 4 – Section 510(b) Claims.  On the Effective Date, all Section 510(b) Claims shall be cancelled and each holder of a Section 510(b) Claim shall not receive or retain any property on account of such Claim.

(e)    Class 5 – Intercompany Claims.  On the Effective Date, all Intercompany Claims shall be cancelled and each holder of an Intercompany Claim shall not receive or retain any property on account of such Claim.

(f)    Class 6 – Equity Interests.  On the Effective Date, all Equity Interests shall be cancelled and each holder of an Equity Interest shall not receive or retain any property on account of such Equity Interest.

3.3.    Elimination of Vacant Classes.  Any Class of Claims or Equity Interests that does not have a holder of an Allowed Claim or Equity Interest shall be deemed eliminated from the Plan.

## Article IV

## Means for Implementation

4.1.    Substantive Consolidation.  Entry of the Confirmation Order shall constitute the approval, effective as of the Effective Date, of the substantive consolidation of the Debtors for the purposes of voting on the Plan, confirmation of the Plan, and making Distributions, as further described herein.  The Plan does not contemplate the substantive consolidation of the Debtors for any other purposes.  On and after the Effective Date, (a) all guaranties of any Debtor of any payment, performance, or collection of another Debtor shall be deemed eliminated and cancelled; (b) any obligation of one of the Debtors and all guarantees with respect thereto executed by another Debtor shall be treated as a single obligation and any obligation of the Debtors, and all multiple Claims against such entities on account of such joint obligations, shall be treated and Allowed only as a single Claim against the consolidated Debtors; (c) each Claim filed against any Debtor shall be deemed filed against the consolidated Debtors and shall be deemed a single Claim against and a single obligation of the consolidated Debtors; and (d) for the purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be setoff against the debts of any of the Debtors.  On the Effective Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guarantees of collection, payment, or performance made by one Debtor as to the obligations of another Debtor shall be released and of no further force and effect.  Except as set forth in this Section, such substantive consolidation shall not (other than for purposes related to the Plan) affect the legal or corporate structures of the Debtors or cause any Debtor to be liable for any Claim under the Plan for which it otherwise is not liable, and the liability for any such Claim shall not be affected by such substantive consolidation.  Notwithstanding the foregoing, all post-Effective Date Statutory Fees shall be calculated on a separate legal entity basis for each Debtor.

4.2.    Liquidation of the Debtors.  Upon the Effective Date, the Debtors shall be liquidated in accordance with the Plan and applicable law, and the Debtors' operations shall become the responsibility of the Plan Administrator, who shall thereafter have responsibility for the management, control, and operation of the Debtors and who may use, acquire, and dispose of property free and clear of any restrictions of the Bankruptcy Code or Bankruptcy Rules, in each instance in consultation with the Plan Committee.  The Plan Administrator shall act as the Debtors'

liquidating agent and shall be authorized and obligated, as such, to take any and all actions necessary or appropriate to implement the Plan or wind down the Debtors, in each instance in consultation with the Plan Committee, including any and all actions necessary to (a) liquidate the Debtors' Assets, (b) investigate and prosecute Causes of Action, including the Lumbermens Action, on the Debtors' behalf in the Bankruptcy Court or any other court of competent jurisdiction, (c) defend, protect, and enforce any and all rights and interests of the Debtors, (d) make any and all Distributions required or permitted to be made, (e) file any and all reports, requests for relief, or objections thereto, (f) dissolve the Debtors and otherwise wind down the Debtors and any corporate entity owned by the Debtors, (g) file such post-Effective Date reports as may be required under applicable law, (h) pay all Statutory Fees, (i) object to Claims filed against the Debtors, and (j) pay any and all claims, liabilities, losses, damages, costs, and expenses incurred in connection therewith or as a result thereof, including all fees and expenses of the Plan Administrator's attorneys and other professionals and the Creditors' Committee's Professionals. The Plan Administrator shall be authorized to execute such documents and take such other action as may be necessary to effectuate the Plan and perform his duties as liquidating agent. The Plan Administrator shall be authorized to retain attorneys and other professionals and may incur reasonable fees and expenses in the performance of his duties as the Debtors' liquidating agent, which reasonable fees and expenses shall be paid from the Administrative Reserve.

4.3.    Plan Administrator.    Upon the Effective Date, the Plan Administrator shall be deemed the sole director of each Debtor for all purposes, with all necessary and appropriate power to act for, on behalf of, and in the name of the Debtors.  The Plan Administrator may be removed for cause by order of the Bankruptcy Court following notice and a hearing.  As used in this Section, "cause" means a judicial determination that the Plan Administrator has engaged in actual fraud, gross negligence, or willful misconduct, or has otherwise materially and substantially failed to discharge his duties under the Plan, and such material and substantial failure has continued for sixty (60) days following the Plan Administrator's receipt of written notice specifically asserting such failures.  For the avoidance of doubt, the Plan Committee shall have standing to seek entry of an order removing the Plan Administrator for cause.  The Plan Administrator may also voluntarily resign, upon notice filed with the Bankruptcy Court and served upon the Plan Committee; *provided*, *however*, that no voluntary resignation by the Plan Administrator shall be effective until a successor has been appointed by the Plan Committee.  If the Plan Administrator is removed for cause, voluntarily resigns, or is otherwise unable to serve, the Plan Committee shall, upon notice filed with the Bankruptcy Court, appoint a qualified individual to replace the Plan Administrator.

4.4.    Plan Committee.  Upon the Effective Date, the Plan Committee shall be appointed, which shall be comprised of one or more members of the Creditors' Committee as designated by the Creditors' Committee at least three (3) days prior to the Confirmation Hearing.  In the event of the death or resignation of any member of the Plan Committee, such committee's remaining members shall be entitled to designate a successor member from among the holders of Allowed Note Claims or Allowed General Unsecured Claims.  If a Plan Committee member assigns its Claim in full or releases the Debtors from payment of the balance of its Claim, such act shall constitute a resignation from the Plan Committee.  Until a vacancy on the Plan Committee is filled, such committee shall function in its reduced number.  Promptly following the establishment of the Plan Committee, the Plan Committee may enact bylaws governing its operating procedures and related matters, as deemed appropriate in the Plan Committee's sole discretion.  Following all payments being made to holders of Allowed Claims under the Plan, the Plan Committee shall be

dissolved and the members thereof shall be released from any and all further authority, duties, responsibilities, and obligations related to their service as Plan Committee members, and the retention or employment of the Plan Committee's attorneys and other professionals shall terminate. The Plan Committee shall have the right to (a) retain attorneys or other professionals, the reasonable fees and expenses of which shall be paid by the Debtors or the Plan Administrator, as applicable, upon the submission of invoices, without the need for an application or further order of the Bankruptcy Court; (b) object to Claims filed against the Debtors; (c) review and approve any proposed resolution concerning the Lumbermens Action; (d) review and approve any proposed abandonment or sale of Assets by the Debtors, in each instance where the amount in controversy exceeds $50,000; and (e) perform such additional functions as may be agreed to by the Plan Administrator, provided in the Confirmation Order, or provided for by order of the Bankruptcy Court entered after the Effective Date.

4.5. No Liability. The Plan Administrator, the Plan Committee, the Plan Committee's members, and their respective employees, professionals, agents, and representatives shall not be liable for the act or omission of any other member, employee, professional, agent, or representative of the Plan Administrator or the Plan Committee, nor shall they be liable for any act or omission taken or omitted to be taken in their respective capacities, other than acts or omissions constituting actual fraud, gross negligence, or willful misconduct. The Plan Administrator and Plan Committee shall be entitled to consult with attorneys, accountants, financial advisors, and other agents and representatives, and shall not be liable for any act taken or omitted to be taken in accordance with advice rendered by such entities. Notwithstanding the foregoing, the Plan Administrator and Plan Committee shall not be under any obligation to consult with attorneys, accountants, financial advisors, or other agents or representatives, and their determination not to do so shall not result in the imposition of liability, unless such determination constitutes actual fraud, gross negligence, or willful misconduct.

4.6. Indemnification. The Debtors and their estates shall indemnify and hold harmless the Plan Administrator, the Plan Committee, the Plan Committee's members, and their respective employees, professionals, agents, and representatives, in each case in their capacity as such, from and against any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to attorneys' fees and expenses, arising out of or due to their acts or omissions related to the performance of their duties under the Plan; *provided*, *however*, that no such indemnification shall be made to such entities for such acts or omissions constituting actual fraud, gross negligence, or willful misconduct.

4.7. State Street Escrow. On the Effective Date or as soon as practicable thereafter, unless the Bankruptcy Court orders otherwise prior to or after the Effective Date, (a) all funds held by State Street Corporation, its affiliates, or its successors or assigns, in one or more accounts identified on a schedule to be filed with the Bankruptcy Court not later than five (5) days prior to the Confirmation Hearing shall be delivered to the Debtors or the Plan Administrator; and (b) any agreements and related transaction documents governing such accounts shall be deemed automatically cancelled and shall be of no further force or effect.

4.8. Leesport Property Escrow. On the Effective Date or as soon as practicable thereafter, all funds escrowed by the Debtors in accordance with the Leesport Sale Order shall be returned to the Debtors or the Plan Administrator and any escrow agreement, consent agreement

concerning the transfer of the escrowed funds from Search & Settlement Solutions, Inc., as title agent, to Stevens & Lee, as counsel to the Schuylkill Valley School District, and related transaction documents shall be deemed automatically cancelled and shall be of no further force or effect.

4.9.   PIP and ERP Obligations.   On the Effective Date or as soon as practicable thereafter, the Debtors shall satisfy all outstanding obligations owing pursuant to the PIP and ERP Order.

4.10.   Corporate Action.   Upon the Effective Date, all matters under the Plan involving or requiring ~~corporation~~corporate action of the Debtors shall be deemed to have been authorized and to have occurred and be in effect from and after the Effective Date without further action by the Debtors or authorization from the Bankruptcy Court.

4.11.   Continued Corporate Existence; Dissolution of the Debtors.   Upon the Effective Date, the Debtors shall remain in existence; *provided*, *however*, the Plan Administrator may file certificates of dissolution in respect of the Debtors and take such other action as may be required to dissolve the Debtors.

4.12.   Cancellation of Securities.   Except as otherwise provided in the Plan, on the Effective Date, all notes, indentures, stock, instruments, certificates, and other documents evidencing the Note Claims and Equity Interests, including the Notes and Indentures, shall be deemed automatically cancelled and shall be of no further force or effect, whether surrendered for cancellation or otherwise, and the obligations of the Debtors' estates thereunder or in any way related thereto shall be terminated.  Notwithstanding the foregoing, the Notes and Indentures shall continue in effect solely for the purposes of (a) allowing the Indenture Trustees to receive Distributions on behalf of and make Distributions to their respective holders of Allowed Note Claims; (b) allowing holders of Allowed Note Claims to receive Distributions on account of such Claims; (c) permitting Indenture Trustees to receive payment of their respective Indenture Trustee Fees from the Plan Administrator to the extent permitted under the Plan, including, without limitation, Section 2.6 of the Plan; (d) allowing Indenture Trustees to maintain, assert, and enforce their Charging Liens for payment of any Indenture Trustee Fees that are not paid by the Plan Administrator pursuant to Section 2.6 of the Plan or otherwise; (e) permitting Indenture Trustees to serve on the Plan Committee after the Effective Date; and (f) permitting the Indenture Trustees to appear and be heard in the Chapter 11 Cases.  The Notes and the Indentures shall terminate completely upon the completion of all Distributions by the Indenture Trustees to holders of Allowed Note Claims.  In addition, notwithstanding the cancellation of Equity Interests pursuant to the Plan, the Plan Administrator shall be deemed the holder of all equity interests in the Debtors on and after the Effective Date solely to effectuate the Plan.  The Indenture Trustees shall be entitled to receive reasonable compensation for their services and reimbursement of their expenses in connection with making any Distributions.  Any such compensation which is not paid by the Plan Administrator shall be payable from the Distributions through the exercise by the Indenture Trustees of their Charging Liens.

4.13.   Preservation of Causes of Action.   Except as otherwise provided in the Plan, all Claims and Causes of Action that the Debtors may have against any person or entity shall be preserved, including, without limitation, the Lumbermens Action and any related Claims the

Debtors may have in connection with the Lumbermens Liquidation. For the avoidance of doubt, the Plan Administrator and Plan Committee shall jointly determine whether and under what terms to resolve the Lumbermens Action and any related claims the Debtors may have, or may have had, against Lumbermens or its affiliates.

## Article V

## Executory Contracts and Unexpired Leases

5.1. <u>Assumed and Rejected Executory Contracts and Unexpired Leases</u>. Each executory contract and unexpired lease as to which any Debtor is a party shall be deemed automatically rejected on the Effective Date, unless such executory contract or unexpired lease (a) shall have been previously assumed or rejected by the Debtors by order of the Bankruptcy Court, (b) is the subject of a motion to assume pending on or before the Effective Date, or (c) is otherwise assumed pursuant to the Plan. Entry of the Confirmation Order shall constitute approval of the rejections contemplated by the Plan as of the Effective Date. Notwithstanding the foregoing, entry of the Confirmation Order shall constitute approval of the assumption of the executory contracts and unexpired leases identified on <u>Schedule 5.1</u> as of the Effective Date. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Effective Date with respect to each executory contract or unexpired lease set forth in Schedule 5.1. To the extent the Bankruptcy Court determines otherwise with respect to any executory contract or unexpired lease, the Debtors reserve the right to seek rejection of such contract or lease or other available relief.

5.2. <u>Rejection Damages Bar Date</u>. If a Claim arises from the rejection of any executory contract or unexpired lease pursuant to Section 5.1, such Claim shall be barred and unenforceable against the Debtors or their property unless a proof of claim asserting such Claim is filed with the Bankruptcy Court or the Debtors' Claims Agent and served upon the Debtors within thirty (30) days after the Effective Date. Unless otherwise ordered by the Bankruptcy Court, all such rejection damages Claims shall be treated as General Unsecured Claims under the Plan.

## Article VI

## Distribution Provisions

6.1. <u>Administrative and Disputed Claims Reserves</u>. Prior to making any Distribution on account of Allowed Note Claims and Allowed General Unsecured Claims, the Debtors shall establish the Administrative Reserve and Disputed Claims Reserve. The Plan Administrator shall (a) pay the fees and expenses associated with prosecuting the Lumbermens Action to a conclusion and liquidating and administering the Debtors' estates with funds from the Administrative Reserve; and (b) make Distributions to holders of Claims which become Allowed after the Effective Date from the Disputed Claims Reserve. Any excess Cash remaining in the (i) Administrative Reserve upon the conclusion of the Lumbermens Action and after the payment of all fees and expenses of liquidating and administering the Debtors' estates; and (ii) Disputed Claims Reserve after all Disputed Claims have been either Allowed or disallowed shall become Available Cash and be distributed pursuant to the Plan.

6.2.    Record Date for Distributions.  Upon the Distribution Record Date, (a) the transfer registers for each Class of Claims maintained by the Claims Agent shall be deemed closed and the Debtors shall have no obligation to recognize any transfer of Claims occurring on or after the Distribution Record Date; and (b) the registers for the Notes maintained by the Indenture Trustees shall be deemed closed and the Debtors and Indenture Trustees shall have no obligation to recognize any transfer of Notes occurring on or after the Distribution Record Date.

6.3.    Delivery of Distributions.  The Plan Administrator shall make all Distributions on behalf of the Debtors.  Except with respect to holders of Allowed Note Claims, the Plan Administrator shall make Distributions to holders of Allowed Claims as of the Distribution Record Date at the address for each such holder as indicated on the Debtors' books and records or as set forth in any proof of claim filed by such holder.  Distributions to holders of Allowed Note Claims shall be made to the Indenture Trustees for the benefit of the holders of such Claims and shall be deemed completed when made to such Indenture Trustees.  The Indenture Trustees shall hold or direct their respective Distributions, subject to their right to assert Charging Liens against such Distributions, for the benefit of the holders of Allowed Note Claims.  As soon as practicable after its receipt of any Distribution, the applicable Indenture Trustee shall arrange to deliver such Distribution (subject in all respects to any asserted Charging Lien) to or on behalf of the holders of the Allowed Note Claims for which such Distribution was made.  Notwithstanding the foregoing, the Debtors shall not make Distributions to holders of Allowed General Unsecured Claims if the Disclosure Statement Hearing Notice or Solicitation Package mailed to such creditors were returned as undeliverable; *provided*, *however*, that each holder of an Allowed General Unsecured Claim shall be entitled to receive Distributions, to the extent Distributions are made to holders of Allowed General Unsecured Claims under the Plan, provided (a) such holder provides the Debtors with updated contact information within thirty (30) days following the Effective Date; or (b) the Plan Administrator can, with reasonable effort, locate such holder within thirty (30) days following the Effective Date.  Each Allowed Class 3 Claim shall be subject to the $50 Administrative Charge and no Distribution will be made in respect of any Allowed Class 3 Claim if the Administrative Charge reduces the Distribution such Claimant would receive to $0.  For the avoidance of doubt, the Administrative Charge shall only be recoverable as an offset against an Allowed Class 3 Claim.

6.4.    Manner of Distributions.  At the option of the Plan Administrator, Distributions may be made in Cash, by wire transfer, or by a check drawn on a domestic bank.  Notwithstanding anything to the contrary in the Plan, if any portion of a Claim is a Disputed Claim, no Distribution shall be made to the holder thereof on account of such portion of the Claim that constitutes a Disputed Claim unless and until such portion becomes Allowed.  Nothing in the Plan shall be deemed to prohibit or require Distribution on account of any undisputed portion of a Claim and, when only a portion of a Claim is Disputed, partial Distributions may be made with respect to the portion of such Claim that is not Disputed.  If, following the initial Distribution and, if applicable, one or more subsequent Distributions, the Plan Administrator determines, in consultation with the Plan Committee, that there is insufficient Available Cash to make a cost-efficient additional Distribution, taking into account the size of the Distribution to be made and the number of recipients of such Distribution, the Plan Administrator shall, in consultation with the Plan Committee, donate such Available Cash to one or more reputable charitable organization(s).

6.5.    <u>Minimum Distributions</u>.  By application of the Administrative Charge, the Plan Administrator shall not be required to make Distributions to any holder of an Allowed Class 3 Claim in an amount less than $50.  Further, the Plan Administrator shall not be required to make Distributions to any holder of an Allowed Claim in any other Class in an amount less than $50.  Cash allocated to an Allowed Claim but withheld from Distribution pursuant to this provision shall be held by the Plan Administrator for future Distribution to holders of Allowed Claims, if sufficient funds are available to make such future Distributions.

6.6.    <u>Undeliverable Distributions</u>.  If a Claimholder's Distribution is returned as undeliverable, no further Distributions to such Claimholder shall be made.  Amounts in respect of undeliverable Distributions shall be returned to the Debtors until such Distributions are claimed. All funds or other undeliverable Distributions returned to the Debtors and not claimed within ninety (90) days shall irrevocably revert to the Debtors and shall become Available Cash and any Claim in respect thereof shall be deemed satisfied and the holder thereof shall be forever barred from asserting such Claim against the Debtors and their property.

6.7.    <u>Failure to Present Checks</u>.  Each check issued by the Plan Administrator on account of an Allowed Claim shall be null and void if not negotiated within ninety (90) days after the issuance of such check.  Requests for reissuance of any check shall be made to the Plan Administrator by the holder of the Allowed Claim to whom such check was originally issued. After the ninety (90) day period following the date of issuance of such check, the amount represented by such check shall irrevocably revert to the Debtors and shall become Available Cash and any Claim in respect thereof shall be deemed satisfied and the holder thereof shall be forever barred from asserting such Claim against the Debtors and their property.

## Article VII

## Claim Administration Provisions

7.1.    <u>Reservation of Rights to Object to Claims</u>.  Unless a Claim is specifically Allowed pursuant to the Plan or otherwise Allowed prior to or after the Effective Date, the Debtors, the Plan Administrator, and the Plan Committee reserve any and all objections to any and all Claims and motions for the payment of Claims, without limitation.  The Debtors' failure to object to a Claim in the Chapter 11 Cases shall be without prejudice to the Plan Administrator's or the Plan Committee's right to contest such Claim in the Bankruptcy Court.

7.2.    <u>Claim Objection Deadline</u>.  All objections to Claims must be filed and served by the later of two (2) years after the Effective Date and eighteen (18) months after the Lumbermens Action is litigated to a conclusion, settled, or otherwise resolved; *provided*, *however*, the foregoing deadline for filing and serving objections to Claims may be extended by order of the Bankruptcy Court for cause shown.

7.3.    <u>Filing of Objections</u>.  A Claim objection shall be deemed properly served on a Claimholder if the Debtors, the Plan Administrator, or the Plan Committee effect service by any of the following methods: (a) in accordance with Bankruptcy Rule 7004; (b) by first class mail on the creditor identified in the proof of claim or its representative identified in the proof of claim; or (c) by first class mail on counsel that appeared on behalf of the Claimholder in the Chapter 11 Cases.

7.4.    <u>Amendments to Claims</u>.  On and after the Effective Date, other than a proof of claim relating to an executory contract or unexpired lease that is rejected pursuant to the Plan, a proof of claim may not be filed or amended without prior authorization of the Bankruptcy Court or the Plan Administrator.

7.5.    <u>Setoff and Recoupment</u>.  The Debtors or Plan Administrator may setoff against or recoup from any Claim, and Distributions to be made in respect thereof pursuant to the Plan, claims of any nature whatsoever the Debtors may have against the Claimholder.  Neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors of any right to setoff or recoupment that the Debtors may have against the Claims of such holder.

7.6.    <u>No Interest</u>.    ~~Postpetition~~<u>Except as required by section 1129(a)(9)(C) of the Bankruptcy Code, postpetition</u> interest shall not accrue or be paid on Claims and no Claimholder shall be entitled to interest accruing on or after the Petition Date on any Claim.  For the avoidance of doubt, <u>except as required by section 1129(a)(9)(C) of the Bankruptcy Code,</u> interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date through the date a final Distribution is made when and if such Disputed Claim becomes Allowed.

7.7.    <u>Disallowance of Claims Payable by Third Parties</u>.  No Distributions shall be made on account of an Allowed Claim payable under one of the Debtors' insurance policies until the holder of such Claim has exhausted all remedies with respect to such insurance policy.  To the extent one or more of the Debtors' insurers agrees to satisfy in full a Claim, then immediately upon such insurer's agreement and upon notice by the Plan Administrator to the applicable Claimholder and Claims Agent, such Claim shall be disallowed and expunged, without a Claim objection having to be filed with the Bankruptcy Court and without any further order of the Bankruptcy Court.

7.8.    <u>Disallowance of Duplicative Note Claims</u>.  All Note Claims that are duplicative of Note Claims filed by the Indenture Trustees shall be disallowed and expunged upon notice by the Plan Administrator to the applicable Claimholder and Claims Agent, without a Claim objection having to be filed with the Bankruptcy Court and without any further order of the Bankruptcy Court.  For the avoidance of doubt, the Note Claims filed by the Indenture Trustees shall be the sole surviving Claims in respect of the Notes.

7.9.    <u>Withholding and Reporting</u>.  The Debtors and Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions shall be subject to any such withholding and reporting requirements.  The Plan Administrator shall be entitled to deduct any federal, state, or local withholding taxes from any Distributions.  As a condition to making any Distribution, the Plan Administrator may require that the holder of an Allowed Claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Plan Administrator to comply with applicable tax reporting and withholding laws.

# Article VIII

## Effects of Plan Confirmation

8.1.    **Injunction.  Except as otherwise provided in the Plan, all entities that have held, hold, or may hold Claims against or Equity Interests in the Debtors or their estates that arose prior to the Effective Date are permanently enjoined, solely with respect to any such Claims or Equity Interests, from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, their estates, or the Plan Administrator; (b) enforcing, attaching, collecting, or recovering, by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, their estates, or the Plan Administrator; (c) creating, perfecting, or enforcing, in any manner, directly or indirectly, any Lien or encumbrance against the Debtors, their estates, or the Plan Administrator; (d) except to the extent permitted by sections 362(b), 553, 559, 560, or 561 of the Bankruptcy Code, asserting any right of setoff, subrogation, or recoupment against the Debtors, their estates, or the Plan Administrator; (e) pursuing any Claim or Cause of Action released pursuant to the Plan; or (f) taking actions which interfere with the implementation or consummation of the Plan.**

8.2.    **Exculpation.  The Exculpated Parties shall neither have nor incur any liability to any person or entity for any Claim, Cause of Action, or other assertion of liability for any act taken or omission occurring on or after the Petition Date in connection with, arising from, or relating to the Debtors, the Chapter 11 Cases, the Plan, the pursuit of confirmation of the Plan, or the administration of the Plan or property Distributed under the Plan; *provided*, *however*, that the foregoing shall not release any Exculpated Party from liability resulting from actual fraud, gross negligence, or willful misconduct, as determined by a Final Order.**

8.3.    **Release of Directors and Officers.  On the Effective Date, the Debtors, in their individual capacities and as debtors in possession for and on behalf of their estates, shall release and discharge any and all claims and Causes of Action against their current and former directors and officers based upon or relating to any act or omission occurring prior to the Effective Date; *provided*, *however*, that the foregoing shall not release any director or officer from liability resulting from actual fraud, gross negligence, or willful misconduct, as determined by a Final Order; *provided further*, *however*, that the foregoing shall not affect the Debtors' indemnification obligations or any other contractual obligations to such directors and officers.**

8.4.    **Terms of Stays and Injunctions.  The automatic stay provided under section 362(a) of the Bankruptcy Code and the injunction set forth in Section 8.1 shall remain in full force and effect until the closing of the Chapter 11 Cases.**

## Article IX

### Conditions to the Effective Date

9.1.    <u>Conditions to the Effective Date</u>.  The Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full: (a) the Confirmation Order shall be in form and substance acceptable to the Debtors and the Creditors' Committee, in their sole and absolute discretion; and (b) the Confirmation Order shall have been entered by the Bankruptcy Court and shall not be subject to any stay of effectiveness and no request for revocation of the Confirmation Order shall have been made pursuant to section 1144 of the Bankruptcy Code, or, if made, shall remain pending.

9.2.    <u>Effect of Non-Occurrence of Conditions</u>.  If, after the Confirmation Order has been entered, a condition to effectiveness has not been satisfied by sixty (60) days after the Confirmation Date, then upon motion by the Debtors or the Creditors' Committee, the Confirmation Order may be vacated by the Bankruptcy Court.

## Article X

### Administrative Provisions

10.1.    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall have jurisdiction over all matters arising under, in, out of, and related to the Chapter 11 Cases, the Debtors, and the Plan, including jurisdiction:

(a)    to hear and determine motions for the assumption or rejection of executory contracts or unexpired leases or the assumption and assignment of executory contracts and unexpired leases to which a Debtor is a party or with respect to which a Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom, including the cure amount, if any, required to be paid, pursuant to section 365(b)(1) of the Bankruptcy Code;

(b)    to determine any and all pending adversary proceedings (including the Lumbermens Action), contested matters, motions, and applications;

(c)    to hear and determine any disputes relating to any orders entered, or stipulations approved, by the Bankruptcy Court in the Chapter 11 Cases;

(d)    to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(e)    to hear and determine motions for approval of the terms of the sale or abandonment of Assets by the Plan Administrator;

(f)    to hear and determine any and all objections to the allowance or estimation of Claims filed, both before and after the Confirmation Date and Effective Date, including any objections to the classification of any Claim or Equity Interest, and to Allow or disallow any Claim, in whole or in part;

(g) to enter and implement such orders as may be appropriate if the Confirmation Order is stayed, revoked, modified, or vacated;

(h) to enter and implement such orders as may be appropriate if the Confirmation Order is stayed, revoked, modified, or vacated;

(i) to enter orders in aid of execution, implementation, or consummation of the Plan;

(j) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(k) to hear and determine all applications for the allowance of Professional Fee Claims and all other applications for compensation or reimbursement of expenses under the Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

(l) to determine requests for the payment of Administrative Claims or Claims entitled to priority under section 507(a) of the Bankruptcy Code;

(m) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, including disputes arising under the Retention Agreement or any other agreements, documents, or instrumented executed in connection with the Plan;

(n) to hear and determine the Lumbermens Action and all objections, actions, or adversary proceedings to recover assets of the Debtors and their estates, wherever located;

(o) to hear and determine matters concerning federal, state, and local taxes pursuant to sections 346, 505, and 1146 of the Bankruptcy Code;

(p) to hear and determine all disputes interpreting the injunctions and exculpations in Article VIII;

(q) to hear and determine a motion for a further release of the Plan Administrator, the Plan Committee, the Plan Committee's members, and/or their professionals and advisors in connection with the conclusion of the liquidation of the Debtors and administration of their estates;

(r) to hear and determine all other disputes arising out of or related to the Chapter 11 Cases;

(s) to hear any other matter not inconsistent with the Bankruptcy Code; and

(t) to enter a final decree closing the Chapter 11 Cases.

10.2.   Statutory Fees.  All Statutory Fees payable through the Effective Date shall be paid by the Debtors on or before the Effective Date.  All Statutory Fees payable after the Effective Date shall be paid by the Debtors.

10.3.   Tax Exemption.  To the fullest extent permitted by section 1146 of the Bankruptcy Code, any transfer of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or assessment.

10.4.   Binding Effect of Plan.  Upon the Effective Date, the Plan shall bind any holder of a Claim against or Equity Interest in the Debtors, whether or not the Claim or Equity Interest of such holders is impaired under the Plan and whether or not such holder has accepted the Plan.

10.5.   Termination of the Creditors' Committee.  Upon the Effective Date, the Creditors' Committee shall automatically dissolve, whereupon its members, Professionals, and agents shall be released from any further duties in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (a) obligations arising under confidentiality agreements, joint interest agreements, and protective orders entered in the Chapter 11 Cases, which shall remain in full force and effect; (b) applications for Professional Fee Claims; and (c) any motions or other actions seeking to appeal, vacate, alter, or amend the Confirmation Order.

10.6.   Governing Law.  Unless a rule of law or procedure is supplied by federal law or unless specifically stated, the laws of the State of New York shall govern the construction and implementation of the Plan and any other agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, documents, and instruments, in which case the governing law set forth therein shall control).

10.7.   Computation of Time.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

10.8.   Entire Agreement.  Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjections, all of which have become merged and integrated into the Plan.

10.9.   Severability.  Should the Bankruptcy Court determine that any provision of the Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Equity Interest or Debtor, the Bankruptcy Court shall have the power to alter and modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision.  Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of the Plan shall remain in full force and effect.

10.10.   Notices.  Any notice required or permitted to be provided under the Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c)

overnight delivery service, and shall be deemed to have been given when received by the following parties:

> If to the Debtors or the Plan Administrator:
>
> Ames Department Stores, Inc.
> 805 Brook Street
> Rocky Hill, Connecticut 06067
> Attn: Rolando de Aguiar
>
> - and -
>
> Proskauer Rose LLP
> Eleven Times Square
> New York, New York 10019
> Attn: Timothy Q. Karcher
>
> - and -
>
> Storch Amini & Munves PC
> 2 Grand Central Tower
> New York, New York 10017
> Attn: Avery Samet
>
> If to the Creditors' Committee:
>
> Otterbourg, Steindler, Houston & Rosen, P.C.
> 230 Park Avenue
> New York, New York 10169
> Attn: Scott L. Hazan

Dated: ~~September 10,~~October 29, 2013          Respectfully submitted,
      New York, New York

                                        /s/ Rolando de Aguiar
                                        Rolando de Aguiar
                                        President and Chief Wind Down
                                        Officer of the Debtors

# EXHIBIT A

## Retention Agreement

<u>**RETENTION AGREEMENT**</u>

This agreement (the "Agreement") is by and between Ames Department Stores, Inc., Ames Merchandising Corporation, Amesplace.com, Inc., Ames Realty II, Inc., and Ames Transportation Systems, Inc. (together, the "Debtors"), as debtors and debtors in possession in chapter 11 cases currently pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and Rolando de Aguiar, an individual (the "Plan Administrator"), in connection with the Debtors' ~~Modified Second~~Third Amended Chapter 11 Plan, filed with the Bankruptcy Court on ~~September 10,~~October 29, 2013 (as amended or modified, the "Plan"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

In consideration of the mutual covenants herein, the Debtors and the Plan Administrator agree as follows:

1. <u>Relationship</u>. The Debtors hereby retain the Plan Administrator, and the Plan Administrator hereby accepts such retention, upon terms and conditions set forth in this Agreement and in the Plan. To the extent that anything herein is inconsistent with the Plan, the terms of the Plan shall govern.

2. <u>Position and Responsibilities</u>. The Plan Administrator shall be retained as the sole director for each of the Debtors for all purposes and in all respects, as set forth in greater detail in the Plan.

3. <u>Term</u>. The Plan Administrator's retention will commence on the Plan's Effective Date and shall continue until (a) the Bankruptcy Court enters an order closing the Debtors' Chapter 11 Cases and the Debtors are dissolved; (b) the Bankruptcy Court enters an order removing the Plan Administrator for cause (as defined in the Plan); or (c) the Plan Administrator voluntarily resigns, upon notice to the Plan Committee and filed with the Bankruptcy Court, and the Plan Committee appoints a successor.

4. <u>Compensation</u>. In consideration for all services rendered by the Plan Administrator under the Plan and this Agreement, the Debtors shall pay the Plan Administrator the following:

(a) <u>Monthly Fees</u>. The Plan Administrator shall receive a fee of $10,000 per month for services rendered pursuant to the Plan and this Agreement. The first monthly fee shall be paid on the Effective Date and shall be prorated based upon the Effective Date. Subsequent monthly fees shall be due on the first business day of each month thereafter.

(b) <u>Reimbursement of Expenses</u>. The Plan Administrator shall be entitled to reimbursement for reasonable expenses incurred in the course of rendering services to the Debtors under the Plan and this Agreement, to be paid within ten days following the delivery of an invoice to the Debtors reasonably describing such expenses. The Plan Administrator shall be entitled to reimbursement of reasonable expenses incurred prior to the Effective Date relating to the Debtors and the Plan.

(c)     Indemnification.  The Plan Administrator shall be entitled to indemnification upon the terms set forth in Section 4.6 of the Plan, which is incorporated herein by reference.

(d)     Exculpation and Release.   The Plan Administrator shall be entitled to an exculpation and release upon the terms set forth in Article VIII of the Plan, which is incorporated herein by reference, and may file a motion for a further release of the Plan Administrator, the Plan Committee, the Plan Committee's members, and/or their professionals and advisors, as contemplated by Section 10.1(q) of the Plan.

5.      Removal for Cause.  The Plan Administrator acknowledges he may be removed for cause by order of the Bankruptcy Court following notice and a hearing.  As used in this Section, "cause" means a judicial determination that the Plan Administrator has engaged in actual fraud, gross negligence, or willful misconduct, or has otherwise materially and substantially failed to discharge his duties under the Plan, and such material and substantial failure has continued for sixty (60) days following the Plan Administrator's receipt of written notice specifically asserting such failures.

6.      Assignment.  This Agreement is personal to the Plan Administrator and may not be assigned in any way by the Plan Administrator.  This Agreement shall not be assigned or delegated by the Debtors without the prior written consent of the Plan Administrator.  The rights and obligations under the Agreement shall inure to the benefit of and shall be binding upon the heirs, administrators, and representatives of the Plan Administrator and the successors, assigns, and representatives of the Debtors.

7.      Severability and Reformation.  The parties hereto intend all provisions of the Agreement to be enforced to the fullest extent permitted by law.  If any provision of this Agreement is held to be illegal, invalid, or unenforceable under applicable law, such provision shall be fully severable and this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision were never a part hereof, and the Agreement's remaining provisions shall remain in full force and effect unaffected by the illegal, invalid, or unenforceable provision.

8.      Further Actions.  Whether or not specifically required under the terms of this Agreement, the parties to this Agreement shall execute and deliver such documents and take such further actions as may be necessary in order for such party to perform all of his or its obligations under this Agreement.

9.      Entire Agreement.  This Agreement and the Plan contain the entire understanding and agreement between the Debtors and the Plan Administrator and supersede any other agreement between the Debtors and the Plan Administrator, whether oral or in writing, with respect to the subject matter hereof.  This Agreement may not be altered, amended, or rescinded, nor may any of its provisions be waived, except by an instrument in writing signed by the parties hereto.

10.     Governing Law; Venue.  This Agreement shall be governed by the laws of the State of New York, without regard to conflict of law provisions.  Any claim, dispute, or controversy arising out of or related to this Agreement shall be determined by the Bankruptcy Court.

11.     Counterparts.  This Agreement may be executed in counterparts, with the same effect as if both parties had signed the same document.  All such counterparts shall be deemed an original, shall be construed together, and shall constitute one and the same instrument.

In witness whereof, the parties have executed this Agreement as follows:

Date: ~~September 10,~~ October 29, 2013

/s/ Rolando de Aguiar
Rolando de Aguiar
President and Chief Wind Down
Officer of the Debtors, on behalf of
the Debtors

/s/ Rolando de Aguiar
Rolando de Aguiar, in his individual
capacity

**Schedule of Disputed Administrative Claims**

The following table lists all Disputed Administrative Claims known to the Debtors as of the date of the Plan, and remains subject to revision by the Debtors at any time before the Confirmation Hearing.

| Creditor Name | Claim No. | Claim Amount | Status |
|---|---|---|---|
| LFD Operating Co., f/k/a Footstar, Inc., n/k/a Xstelos Corp. | 6661, ~~6666~~662 | $1,256,656,76 | Motion for payment currently pending before Bankruptcy Court [Docket No. 4091] |
| ~~Cellmark Paper, Inc.~~ | ~~6663~~* | ~~$2,019,753.70~~ | ~~Motion for payment currently pending before Bankruptcy Court [Docket No. 4107]~~ |
| State of Illinois, Office of the Secretary of State | 20059, 20060, 20061 | $10,621,576.93 | Provisionally settled for $862; finalizing documentation |
| Lumbermens Mutual Casualty Co. | 20039 | $2,000,000.00 | Subject of Lumbermens Action. *See* Disclosure Statement §§ IV.D.6 and VI.A |
| Brother International Corp. | 3346 | $310,329.21 | Provisionally settled for $109; finalizing documentation |
| Town of Enfield, CT | 20040 | $1,231.87 | Provisionally settled for $556.15; finalizing documentation |
| Town of Morristown, VT | 20050 | $1,699.88 | Provisionally settled for $390.30; finalizing documentation |
| U.S. Bank National Association | 20023 | $245,176.90 | Plan provides for payment of Indenture Trustee Fees up to $125,000 and permits exercise of Charging Lien |
| Inez Wells | 20053 | Unliquidated | Settlement discussions pending |

---

~~* Claim no. 6663 was filed by Cellmark Paper, Inc. on January 24, 2013 for amounts paid in connection with a preference judgment entered against it. Such claim does not assert an entitlement to administrative expense priority, and moreover, was filed pursuant to Bankruptcy Rule 3002(c)(3), which only permits the filing of an unsecured, non priority claim following entry of a preference judgment. However, Cellmark filed an application for the allowance of a contingent administrative expense on August 14, 2013 [Docket No. 4107] in the event the preference judgment entered against it is reversed, which application remains pending as of the date of the Plan. Accordingly, out of an abundance of caution the Debtors have included claim no. 6663 on this Schedule 2.1, but dispute its status as an Administrative Claim.~~

| Creditor Name | Claim No. | Claim Amount | Status |
|---|---|---|---|
| Patricia Zello | 20069 | Unliquidated | Settlement discussions pending |
| Ultra Hardware Products | 5645 | $11,525.40 | Not paid pursuant to 11 U.S.C. § 558 |
| Contrarian Capital / Achim Importing Co., Inc. | 20066 | $514,904.64 | Not paid pursuant to 11 U.S.C. § 558 |
| Bacova Guild, Ltd. | 5888 | $66,608.35 | Not paid pursuant to 11 U.S.C. § 558 |
| Amroc Investments, LLC / National Sporting Goods | 6080.01 | $57,124.50 | Not paid pursuant to 11 U.S.C. § 558 |
| Amroc Investments, LLC / Music Industries Group | 6025.01 | $10,807.48 | Not paid pursuant to 11 U.S.C. § 558 |
| Amroc Investments, LLC / JR Plastics LLC | 6535.01 | $308,913.40 | Not paid pursuant to 11 U.S.C. § 558 |
| Amroc Investments, LLC / JAX Inc. | 6076.01 | $7,738.88 | Not paid pursuant to 11 U.S.C. § 558 |
| Amroc Investments, LLC / Hot Shots Inc. | 6534 | $43,152.00 | Not paid pursuant to 11 U.S.C. § 558 |
| Amroc Investments, LLC / BKR Manipex Ltd | 6141.01 | $129,195.00 | Not paid pursuant to 11 U.S.C. § 558 |
| Amroc Investments, LLC / Baby Gold Jewelry, Inc. | 6004.01 | $15,001.82 | Not paid pursuant to 11 U.S.C. § 558 |
| Amroc Investments, LLC / American Moulding & Millwork Co. | 6002.01 | $70,277.25 | Not paid pursuant to 11 U.S.C. § 558 |
| Amroc Investments, LLC / Royal United | 6030 | $33,149.09 | Not paid pursuant to 11 U.S.C. § 558 |
| Amroc Investments, LLC / Monarch Luggage | 6079 | $30,380.00 | Not paid pursuant to 11 U.S.C. § 558 |

# SCHEDULE 5.1

## Schedule of Assumed Contracts

The Debtors are not assuming any executory contracts or unexpired leases pursuant to the Plan.